**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William SPAIN, Defendant-Appellant.**

**No. 86–1401.**

United States Court of Appeals,
Tenth Circuit.

July 13, 1987.

Rehearing Denied Sept. 22, 1987.

Brian K. Holland, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, with him on brief), Denver, Colo., for defendant-appellant.

Richard J. Nolan, Sp. Asst. U.S. Atty. (Robert N. Miller, U.S. Atty., with him on brief), Denver, Colo., for plaintiff-appellee.

Before LOGAN, SETH and MOORE, Circuit Judges.

SETH, Circuit Judge.

The defendant was indicted for possession with intent to distribute a drug alleged to be a Schedule I controlled substance. The defendant entered a guilty plea to the count but reserved the right to appeal the denial of his motion to dismiss the count. The drug here concerned is 3, 4 methylenedioxymethamphetamine.

The basic question on appeal is whether the Drug Enforcement Administration (DEA) had authority to act under the 1984 Act which became 21 U.S.C. § 811(h) and put this drug on Schedule I under a delegation of authority made by the Attorney General in 1973 to schedule drugs under the Controlled Substances Act. Section 811(h) provides for a summary method to place drugs on Schedule I without hearings or findings.

Some description of the procedure and considerations required under the original Act as compared to the 1984 Act is necessary. The Basic Controlled Substances Act, as Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. § 801 et seq.), sets out five schedules on which described drugs were placed or to be placed. 21 U.S.C. § 812(b)(1). The Attorney General was delegated authority by Congress to schedule additional drugs (or to remove drugs from the schedules). We have upheld, as have most other courts, the validity of this delegation to the Attorney General under 21 U.S.C. § 811(a) because Congress required findings and provided sufficient guidelines and factors to be considered. *United States v. Barron*, 594 F.2d 1345 (10th Cir. 1979). The delegation is really also to the Secretary of Health and Human Services because the officer is required to participate.

The Attorney General in 1973 by 28 C.F.R. § 0.100 subdelegated his authority under the Controlled Substances Act to schedule drugs under § 811(a) to the DEA. This subdelegation has been upheld by the courts. *See United States v. Lueck*, 678 F.2d 895 (11th Cir.1982); *United States v. Roya*, 574 F.2d 386 (7th Cir.1978).

In October of 1984 Congress by Public Law 98–473 added a new provision to the Controlled Substances Act. This became 21 U.S.C. § 811(h). It permitted the Attorney General to make temporary placement (for a year) on Schedule I only of a drug "to avoid an imminent hazard to the public safety." This added provision is the one here concerned as the drug which served as the basis for defendant's conviction was added to Schedule I by an application of § 811(h). The new section was added in an attempt to bypass on grounds of "public safety" the delays encountered in the formal hearing route under the Administrative Procedure Act. This § 811(h) requires no findings, no hearing and no determination of particular facts, but only a general conclusion by the Attorney General as to "pub-

lic safety." If the conclusion is reached, the drug automatically goes on Schedule I "temporarily" with the penalty and incarceration provisions applicable thereto as for all other Schedule I drugs which have been placed there as a result of formal hearings. The drug is temporarily on Schedule I but the penalty provisions are not temporary. The defendant was here sentenced to two years incarceration with special parole of three years.

The differences between 811(a), the older provision, and 811(h) here concerned, are substantial both in substance and procedure. Under 811(a), before the Attorney General can begin scheduling proceedings, he must request and receive a recommendation from the Secretary of Health and Human Services as to factors (2), (3), (6), (7) and (8) and scientific and medical "considerations" in (1), (4) and (5). The recommendations of the Secretary are binding on the Attorney General "to such scientific and medical matters." This "binding" nature of the Secretary's recommendation makes the Secretary a partner in the delegation.

The factors are listed in 811(c) with the admonition that the Attorney General "consider" them in "making any *finding* under subsection (a) of this section." (Emphasis added.) The "factors" as to the drug listed in 811(c) are:

"(1) Its actual or relative potential for abuse.

"(2) Scientific evidence of its pharmacological effect, if known.

"(3) The state of current scientific knowledge regarding the drug or other substance.

"(4) Its history and current pattern of abuse.

"(5) The scope, duration, and significance of abuse.

"(6) What, if any, risk there is to the public health.

"(7) Its psychic or physiological dependence liability.

"(8) Whether the substance is an immediate precursor of a substance already controlled under this subchapter."

In the 1984 Act, 811(h)(1) centers the emphasis on actual abuse, diversion from legitimate channels and on clandestine manufacture and marketing. In contrast under 811(h) the factors are reduced and limited to:

"(4) Its history and current pattern of abuse.

"(5) The scope, duration, and significance of abuse.

"(6) What, if any, risk there is to the public health."

Again, under 811(h) the Attorney General need only "consider" the three factors (as 811(a)) but no findings are required; consider whatever else he has available; and reach a conclusion. The "procedure," if that is really what it is, is indeed summary.

Also, under 811(h) as compared with 811(a) the following procedural steps need *not* be taken:

(1) No hearing need be held.

(2) No comment required from Secretary of Health.

(3) No judicial review of action.

(4) No scientific factors involved nor are outside views provided for on any subject. The ultimate conclusion is as to "public safety."

(5) No "scheduling" is required—if a conclusion is reached the drug automatically goes on Schedule I whether it otherwise fits or not, and no scientific reasons nor impact on the users are considered.

The conclusion as to the hazard to "public safety" is a standard especially within the expertise of the Attorney General himself and his immediate staff rather than one for a technical group as the DEA.

The determinations under 811(h) relate only to the effect on the public generally, thus the extent and pattern of abuse, public health, and public safety. There are no technical factors as to the impact on the individual or medical use of the drug or any similar elements under 811(a). Again, this indicates that the determination is to be made in the summary proceedings by an official concerned with public safety.

It is very significant in our view on the subdelegation issue that the Congressional

delegation of authority under 811(h) is to the Attorney General *alone.* The Secretary of Health is not included and is not required to participate and did not do so here. The Congressional delegation to the Attorney General is not without doubt as to adequacy of standards in 811(h), but for these purposes we do not decide but assume it is valid.

The subject as to which the discretion is exercised (public safety) and the breadth of the discretion given by Congress and the summary internal proceedings are factors to be considered in examining subdelegation to the DEA. Again, it must be observed that we are concerned with new executive branch proceedings to create the definition of a felony which are summary and internal in nature. There was notice to the public that possession of the drug would become a crime in 30 days by publication in the Federal Register compared to legislative consideration, hearings, etc., and Administrative Procedure Act hearings and public participation—again, something new and different.

The borderline standards in the delegation by Congress to the Attorney General have to be a factor in consideration of subdelegation. The Government would here have us rely for the subdelegation of authority to the DEA on the 1973 delegation of the Attorney General's functions under the Drug Abuse Prevention and Control Act of 1970. (*See* 38 Fed.Reg. 18380, July 10, 1973.) Drug scheduling under 811(a) has been done by the DEA under the 1973 delegation. This subdelegation has been upheld as to 811(a). *See United States v. Lueck,* 678 F.2d 895 (11th Cir. 1982); *United States v. Roya,* 574 F.2d 386 (7th Cir.1978). However, we cannot construe the 1973 subdelegation to apply to the new 811(h).

To be sure, as the Government argues, § 811(h) was an amendment to the earlier Act. It was technically an "amendment," as described, but it was a different and separate addition to the Act with a new purpose and "procedure." The differences between the older Act, 811(a), and the new Act are so fundamental that it cannot be assumed that the 1973 subdelegation was intended or could be construed to cover the 1984 Act. After all we are concerned with an act made a crime by the executive branch under delegated authority. All elements of the exercise of this authority must conform strictly to the law and decisions. It must be accomplished by the agency having authority to act. The statute must be narrowly read. *United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488; *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905. As the Court stated in *United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341, where the issue was to whom the initiation of wiretap authority could be delegated,

> "Despite § 510 [28 U.S.C. § 510], Congress does not always contemplate that the duties assigned to the Attorney General may be freely delegated."

We must conclude that the 1973 subdelegation is not applicable to the 1984 addition of new methods.

It should also be mentioned that there was no "order" issued as contemplated by 811(h) that the drug here concerned became a Schedule I drug. The Act explicitly states:

> "Such an order may not be issued before the expiration of thirty days from—
> "(A) the date of the publication ... of a notice in the Federal Register of the intention to issue such order [and notice to the Secretary of Health]...."

Thus the "order" may *not be issued* before the end of the 30–day period after notice of intention. No such order was issued at the prescribed time. Only a notice of intention was issued into which the DEA sought to incorporate a premature "order." This was the original Federal Register notice (50 Fed.Reg. 23118, May 31, 1985), and nothing else was "issued."

In view of the several reasons herein described the conviction and judgment herein appealed must be reversed. IT IS SO ORDERED.