828 F.2d 1111
 UNITED STATES of America, Plaintiff-Appellant,
v.
Terry Wilson CAUDLE, Defendant-Appellee.
UNITED STATES of America, Plaintiff-Appellant,
v.
Katherine CLARK, Mark Creech, James Edward Mitchell, Joel
Jack Pincus, and Glenn Alan Teague, Defendants-Appellees.
 Nos. 86-1753, 86-1754.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 8, 1987.
 
 Mervyn Hamburg, Atty., Dept. of Justice, Crim. Div., Appellate Section, Washington, D.C., Marvin Collins, U.S. Atty., for U.S.
 Steven P. Anderson, (court appointed), Akin, Gump, Strauss, Hauer & Feld, Dallas, Tex., Thomas W. Mills, Jr., Vial, Hamilton, Koch & Knox, Dallas, Tex., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of Texas.
 Before THORNBERRY, GARWOOD, and HIGGINBOTHAM, Circuit Judges:
 THORNBERRY, Circuit Judge:
 
 
 1
 This case consolidates appeals in two criminal cases involving a total of seven defendants. All defendants were charged with several counts relating to the distribution of 3,4-methylenedioxymethamphetamine, also known as MDMA or Ecstasy. The district court dismissed the indictments against the defendants and the government appealed. We affirm.
 
 I.
 
 2
 The facts relevant to these appeals are clear. No. 86-1753 originated when the government obtained indictments against defendant Caudle and a co-defendant charging them with several counts relating to the distribution of MDMA. The indictments covered conduct from July 7, 1985 to July 9, 1985. No. 86-1754 originated when the government obtained indictments against five defendants charging them with offenses similar to Caudle's. The indictments in the second case covered conduct from July 1 to July 29, 1985. On September 22, 1986, the district court in a single memorandum and order dismissed all indictments and the government appealed.
 
 
 3
 The government asserts that the defendants' conduct was illegal because the Drug Enforcement Administration (DEA), beginning on July 1, 1985, had temporarily added MDMA to Schedule I, the list of drugs most strictly controlled by the 1970 Controlled Substances Act, 21 U.S.C. Secs. 801-904. Under that Act, the DEA,[1] by following a detailed and time consuming procedure, may add drugs permanently to the five schedules. The power to add new drugs temporarily to Schedule I was granted in 1984 when Congress amended the Controlled Substances Act adding subsection 811(h). The procedure required for temporary scheduling is far less involved than that required for permanent scheduling. For temporary scheduling, the Attorney General first must find that a substance poses an "imminent hazard to the public safety." He then must publish a notice in the Federal Register indicating his intention to issue an order adding the substance temporarily to Schedule I. The order itself may not be issued before the expiration of thirty days after the publication of the notice. 21 U.S.C. Sec. 811(h)(1).
 
 
 4
 On May 31, 1985, the DEA attempted to use subsection 811(h) to add MDMA to Schedule I.[2] The government admits, however, that the DEA failed to follow the exact statutory procedure. The DEA never issued a separate order thirty days after the notice, as required by the statute. Instead, the notice itself, published on May 31, 1985, included an order placing MDMA on Schedule I on July 1, 1985 "unless the Acting Administrator gives notice in the Federal Register that this order is rescinded prior to July 1, 1985." 50 Fed.Reg. 22119 (1985).[3]
 
 II.
 
 5
 Subsection 811(h) specifically provides that the order placing a drug temporarily on Schedule I "may not be issued before the expiration of thirty days from ... the date of the publication by the Attorney General of a notice in the Federal Register of the intention to issue such order and the grounds upon which such order is to be issued." 21 U.S.C. Sec. 811(h). In this case, the government concededly issued the order scheduling MDMA at the same time as the notice. Therefore, that order was ineffective and the indictments against the defendants were properly dismissed. The defendants clearly could not be indicted for distributing a drug that was not placed on the list of controlled substances.
 
 
 6
 The government offers two reasons in support of its argument that the DEA succeeded in temporarily scheduling MDMA even though it failed to follow the procedure specified by Congress. First, the government points out that the order by its own terms did not become effective for more than thirty days. As a result, the defendants had adequate notice of the impending criminality of their conduct, and they suffered no prejudice from the DEA's deviation from the proper procedure. But the question in this case is not whether the defendants suffered prejudice; it is whether the government succeeded in creating an offense. The DEA's mistaken procedure may well have provided adequate notice, but that is no guarantee that it also met whatever other goals Congress had in mind when it decided on a procedure. For example, the thirty day waiting period might have been intended to ensure that the Attorney General continue deliberating the propriety of the addition to Schedule I. Once the Attorney General issues an order--even an order that does not go into effect for thirty days--he is less likely to engage in that deliberation.
 
 
 7
 The government also contends in its brief that the legislative history of subsection 811(h) evidences an intention that the DEA should not be bound by the precise procedures.
 
 
 8
 Nothing contained in the legislative history of 21 U.S.C. 811 reflected a desire on the part of Congress to excuse violators because the DEA had failed to issue a second order that essentially would have confirmed what the public already knew: that as of July 1, 1985, MDMA was a prohibited substance.
 
 
 9
 In a related point the government notes the general congressional intention "to turn the screw of the criminal machinery--detection, prosecution and punishment--tighter and tighter." Id. (quoting Gore v. United States, 357 U.S. 386, 390, 78 S.Ct. 1280, 1283, 2 L.Ed.2d 1405 (1958)). These general statements about legislative history, unsupported by any specific language supporting the government's position, however, provide insufficient reason to disregard the plain language of the statute. See, e.g., Tennessee Valley Authority v. Hill, 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 2296 n. 29, 57 L.Ed.2d 117 (1978) ("When confronted with a statute which is plain and unambiguous on its face, we ordinarily do not look to legislative history as a guide to its meaning."); American Trucking Associations, Inc. v. I.C.C., 659 F.2d 452, 458-59 (5th Cir. Unit A Oct. 1981) (the starting point of statutory interpretation is the statute itself; extrinsic aids are not necessary if the statutory language resolves the issue), opinion clarified on other issues, 666 F.2d 167 (5th Cir.1982). Of course, if the unambiguous meaning of a statute is "plainly at variance with the policy of the legislation as a whole," then we may employ extrinsic aids to interpretation. Preterm, Inc. v. Dukakis, 591 F.2d 121, 128 (1st Cir.1979) (quoting United States v. American Trucking Associations, Inc., 310 U.S. 534, 543-44, 60 S.Ct. 1059, 1063-64, 84 L.Ed. 1345 (1939)). But that is not the case here.
 
 
 10
 The government's final argument concerns the July 12, 1985 correction of the misspelling in the original notice-order. The government contends that even if we find the original notice-order defective, we should consider the correction the legal equivalent of a separate order. In that event, the government could still charge the defendants with conduct occurring after July 12, 1985. The difficulty with this position is that the July 12, 1985 correction is patently a mere correction and not an order. Set out in full, the text of the notice was as follows:
 
 Correction
 
 11
 In FR Doc. 85-13171 beginning on page 23118 in the issue of Friday, May 31, 1985, make the following correction:
 
 
 12
 Sec. 1308.11 [Corrected]
 
 
 13
 On page 23119, third column, Sec. 1308.11(g)(2), first line, "3,4-methylenedioxyethamphetamine" should read "3,4-methylenedioxymethamphetamine."
 
 
 14
 50 Fed.Reg. 28396-97 (1985). To read this notice, which purports to be nothing more than typographical instructions, as the legal equivalent of an order adding MDMA to Schedule I is to twist the meaning of words unrecognizably out of shape.
 
 
 15
 Because the DEA failed to follow the procedure necessary to place MDMA temporarily on Schedule I, the district court properly dismissed the indictments and its decision is therefore
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 The statute names the Attorney General, not the DEA, but in 1973 the Attorney General subdelegated his powers under the Controlled Substances Act to the DEA. See 38 Fed.Reg. 18380 (1973) (codified as amended at 28 C.F.R. Sec. 0.100(b) (1985))
 
 
 [2]
 The Attorney General never specifically delegated to the DEA the power to temporarily amend Schedule I using this procedure. The government claims that the Attorney General's earlier delegation of the powers under the original act should apply to delegate automatically the additional power granted by the amendment to the act. The Tenth Circuit rejected this argument in United States v. Spain, 825 F.2d 1426 (10th Cir.1987). In reviewing the DEA's attempt to place MDMA temporarily on Schedule I, Spain noted that "[t]he differences between the older Act, 811(a), and the new Act [811(h) ] are so fundamental that it cannot be assumed that the 1973 subdelegation was intended or could be construed to cover the 1984 Act." Id. at 1429. Because of our disposition of the other issues in this case, we do not reach the issue decided by Spain
 
 
 [3]
 In addition, the DEA's notice-order misspelled the full chemical name of MDMA once out of four appearances in the document. The district court found that the misspelled word actually named a different potential substance. Record, Vol. I at 155-56 (Cause No. 86-1754). The notice-order misspelled "3,4-methylenedioxymethamphetamine" as "3,4-methylenedioxy ethamphetamine." "Eth" or "ethyl" is different from "meth" or "methyl." The DEA published a correction of the misspelling in the Federal Register on June 12, 1985. 50 Fed.Reg. 28396-97 (1985)