**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**William Waldo EMERSON,
Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Scott WOLLMAN, Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Bruce EHRLICH, Defendant–Appellant.**

Nos. 86–5267, 86–5274 and 86–5275.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 2, 1987.

Decided May 10, 1988.

542

Yolanda Orozco, Los Angeles, Cal., for defendant-appellant Emerson.

Michael D. Nasatir, Nasatir & Hirsch, Santa Monica, Cal., for defendant-appellant Ehrlich.

J. Brendan O'Neill, Santa Monica, Cal., for defendant-appellant Wollman.

Michael W. Emmick, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before HUG, BOOCHEVER and WIGGINS, Circuit Judges.

BOOCHEVER, Circuit Judge:

William Waldo Emerson, Scott Wollman, and Bruce Ehrlich (defendants) appeal their convictions under 21 U.S.C. §§ 841(a)(1) and 846 (1982) for distributing and conspiring to distribute 3,4–methylenedioxymeth-amphetamine, also known as MDMA or Ecstasy (MDMA). Defendants challenge the temporary scheduling of MDMA as a controlled substance by the Administrator of the Drug Enforcement Agency (Administrator) under 21 U.S.C. § 811(h) (Supp.III 1985). We hold that the Attorney General did not properly subdelegate his authority temporarily to schedule drugs to the Administrator and reverse the convictions.

## BACKGROUND

Defendants were indicted for their activities involving the distribution of MDMA from or before September 1985 to February 1986. Defendants moved to dismiss the indictment on the ground that the Administrator improperly scheduled MDMA as a temporarily controlled substance. The district court denied the motion. Defendant Emerson then pled guilty to conspiracy to distribute a controlled substance. Defendants Wollman and Ehrlich pled guilty to distribution and conspiracy to distribute a controlled substance. All pleas reserved the right to appeal the court's order upholding the temporary scheduling of MDMA. The defendants timely appeal to this court under 28 U.S.C. § 1291 (1982).

## ANALYSIS

The Controlled Substances Act, Pub.L. No. 91–513, tit. II, 84 Stat. 1242 (1970) (codified as amended at 21 U.S.C. §§ 801–904 (1982 & Supp.III 1985)), prohibits the distribution of a "controlled substance." 21 U.S.C. § 841(a)(1) (1982). Penalties vary according to the scheduling of the substance. Id. § 841(b) (1982). The scheduling of a particular drug (from Schedule I to V in decreasing order of severity of penalty) depends on the drug's potential for abuse, its currently accepted medical use in the United States, and its safety for use or potential for dependency. Id. § 812(b) (1982). Congress initially established schedules for a number of substances, id. § 812(c) (1982), and authorized the Attorney General to schedule, transfer between schedules, or remove a substance from a schedule, id. § 811(a) (1982).

To add a substance to a schedule under the "permanent" scheduling authority, the Attorney General must find the substance has "a potential for abuse" and make the requisite findings of section 812. *Id.* § 811(a)(1) (1982). In making these findings, the Attorney General must consider the following factors with respect to each drug:

(1) Its actual or relative potential for abuse.

(2) Scientific evidence of its pharmacological effect, if known.

(3) The state of current scientific knowledge regarding the drug or other substance.

(4) Its history and current pattern of abuse.

(5) The scope, duration, and significance of abuse.

(6) What, if any, risk there is to the public health.

(7) Its psychic or physiological dependence liability.

(8) Whether the substance is an immediate precursor of a substance already controlled under this subchapter.

*Id.* § 811(c) (1982). The Attorney General must also request an evaluation by the Secretary of Health and Human Services (Secretary). *Id.* § 811(b) (1982). If after weighing the scientific and medical considerations involved in the above eight factors the Secretary recommends against controlling the drug, the Attorney General must honor that decision. *Id.* Finally, any scheduling by the Attorney General must be made in accordance with the formal rule-making requirements of the Administrative Procedure Act (APA), 5 U.S.C. §§ 551–559 (1982 & Supp.IV 1986). 21 U.S.C. § 811(a). In 1973, pursuant to authority granted by 21 U.S.C. § 871(a) (1970), the Attorney General delegated the performance of his functions under the Controlled Substances Act to the Administrator. 28 C.F.R. § 0.100(b) (1986).

Congress recognized that permanent scheduling could take from six to twelve months, during which time "enforcement actions against traffickers are severely limited and a serious health problem may arise." S.Rep. No. 225, 98th Cong., 2d Sess. 264, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3446; *see also* H.R.Rep. No. 835, 98th Cong., 2d Sess., pt. 1, at 11–12 (1984). As a result, Congress amended the Controlled Substances Act in 1984 to authorize the Attorney General to schedule substances on an emergency basis without "await[ing] the exhaustive medical and scientific determinations ordinarily required when a drug is being considered for control." S.Rep. No. 225, 98th Cong., 2d Sess. 265, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3447. The amendment, the Dangerous Drug Diversion Control Act of 1984 (1984 Act), Pub.L. No. 98–473, tit. II, sec. 508, 98 Stat. 2070, 2071–72 (codified at 21 U.S.C. § 811(h) (Supp. III 1985)), permits the Attorney General to schedule temporarily in Schedule I a previously unscheduled substance upon finding this action "necessary to avoid an imminent hazard to the public safety." 21 U.S.C. § 811(h)(1). In making this finding the Attorney General must consider only "those factors set forth in [21 U.S.C. § 811(c)(4), (5), and (6)], including actual abuse, diversion from legitimate channels, and clandestine importation, manufacture, or distribution." *Id.* § 811(h)(3). While the Attorney General must transmit proposed orders to the Secretary, he need only "take into consideration any comments submitted by the Secretary." *Id.* § 811(h)(4). The temporary scheduling expires at the end of one year, with one six-month extension permitted if the Attorney General has undertaken permanent scheduling efforts pursuant to section 811(a)(1). *Id.* § 811(h)(2).

On May 31, 1985, acting pursuant to the 1973 delegation and the Attorney General's temporary scheduling authority under 21 U.S.C. § 811(h), the Administrator issued a notice including an order temporarily scheduling MDMA as a Schedule I controlled substance effective July 1, 1985. Schedules of Controlled Substances; Temporary Placement of 3,4–Methylenedioxymethamphetamine (MDMA) Into Schedule

I, 50 Fed.Reg. 23,118, 23,119 (1985).[1]

## I. REVIEWABILITY

Defendants challenge the constitutionality of section 811(h), the Administrator's general authority to schedule substances temporarily, and the propriety of the particular MDMA scheduling order. Ordinarily these issues would be properly before the court in a criminal proceeding. *See generally* 5 U.S.C. § 703 (1982) ("Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement."). Section 811(h)(6), however, provides that "[a]n order issued under [section 811(h)(1)] is not subject to judicial review." We must consider the extent to which this section precludes our review of the above issues.

■■■■ The government argues that section 811(h)(6) disallows all review by this court—including constitutional review—of the issuance of particular temporary scheduling orders. We disagree. This provision does not refer specifically to review of section 811(h)'s constitutionality or the authority of the Administrator to schedule substances temporarily. Absent "clear and convincing" evidence that Congress intended to preclude constitutional review of agency action, we presume such review to be available. *Califano v. Sanders*, 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977); *Johnson v. Robison*, 415 U.S. 361, 373–74, 94 S.Ct. 1160, 1169, 39 L.Ed.2d 389 (1974); *Rodrigues v. Donovan*, 769 F.2d 1344, 1347 (9th Cir.1985). There is no "clear and convincing" evidence that Congress intended section 811(h)(6)'s general preclusion of "judicial review" to extend to constitutional review of the Attorney General's temporary scheduling orders. Nor does the legislative history of § 811(h) pro-

vide any indication that Congress intended to undertake such "extraordinary" action. *Sanders*, 430 U.S. at 109, 97 S.Ct. at 986. Construing a statute to preclude constitutional review would "raise serious questions concerning [its] constitutionality," and therefore, whenever possible, statutes should be interpreted as permitting such review. *Johnson*, 415 U.S. at 366–67, 94 S.Ct. at 1165. This appeal does not require us to address whether Congress has the power to preclude constitutional review. We merely hold that consistent with section 811(h)(6), we can review on appeal from a criminal conviction the constitutionality of the Administrator's temporary scheduling of MDMA. *Cf. Rodrigues*, 769 F.2d at 1347–48 (statute making Secretary of Labor's decision to deny payments unreviewable did not bar review to ensure that decision comported with fifth amendment's guarantee of due process).

We express no opinion whether section 811(h)(6) precludes judicial review of temporary scheduling orders in criminal enforcement proceedings to determine their compliance with the relevant *statutory* requirements. In *United States v. Caudle*, 828 F.2d 1111, 1112 (5th Cir.1987), the Fifth Circuit held that the order scheduling MDMA was ineffective because it failed to meet section 811(h)'s requirement that such an order "may not be issued before the expiration of thirty days from ... the date of the publication by the Attorney General of a notice in the Federal Register of the intention to issue such order and the grounds on which such order is to be issued." 21 U.S.C. § 811(h). The *Caudle* court nowhere discusses whether judicial review is precluded by section 811(h)(6). Because we conclude *infra* that the Administrator lacked the authority to schedule MDMA temporarily, we do not decide the scope of statutory review available in criminal enforcement proceedings.

---

**1.** On June 17, 1986, the Administrator published a notice extending the emergency classification for six months or until the permanent scheduling procedures were complete. On November 13, 1986, the Administrator issued a final rule permanently placing MDMA on Schedule I, declining to accept an Administrative Law Judge's opinion after hearings that MDMA should be

placed on Schedule III. The First Circuit has since found that the Administrator erred in his interpretation of the criteria for which findings are required under section 812(b)(1), vacating the Schedule I placement and remanding the rule to the Administrator. *Grinspoon v. Drug Enforcement Admin.*, 828 F.2d 881, 891 (1st Cir. 1987).

## II. CONSTITUTIONALITY OF SECTION 811(h)

### A. Congressional Delegation to the Attorney General

Defendants argue that section 811(h) impermissibly delegates Congress' legislative power to the executive and that its provisions are so arbitrary that it does not comport with due process of law. The constitutionality of the statute is a question of law, which we review de novo. *See United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

Congress may provide criminal sanctions for violation of regulations provided that the authority delegated to the executive to promulgate the regulations is "accompanied by sufficient guidelines and standards for the exercise of the authority." *United States v. Davis,* 564 F.2d 840, 844 (9th Cir.1977), *cert. denied,* 434 U.S. 1015, 98 S.Ct. 733, 54 L.Ed.2d 760 (1978). This court in *Davis* held section 811(a)'s permanent scheduling authorization to be a constitutional delegation of authority. 564 F.2d at 843–44. Section 811(a) requires a finding of "a potential for abuse," the requisite findings of section 812, and consideration of the eight factors in section 811(c). Section 811(h) requires a finding of necessity of temporary scheduling "to avoid an imminent hazard to the public safety" and consideration of "those factors set forth in [section 811(c)(4), (5), and (6)], including actual abuse, diversion from legitimate channels, and clandestine importation, manufacture, or distribution." Section 811(h)'s scheduling criteria are as specific as reasonably practicable to meet the threat to the public safety posed by designer drugs, and to provide the Attorney General with sufficient guidance in scheduling dangerous substances temporarily.

Section 811(h)'s temporary scheduling procedure provides significantly less opportunity for public notice and comment than that available for permanent scheduling under section 811(a). While section 811(a) requires APA notice and hearing before a substance may be permanently scheduled, section 811(h)(1)(A) only requires the Attorney General to place a notice in the Federal Register thirty days before the temporary scheduling order is issued and becomes effective. Also, section 811(h), unlike section 811(a), specifically provides that a temporary scheduling order "is not subject to judicial review." 21 U.S.C. § 811(h)(6).

Defendants argue that the lack of notice and comment and restriction of judicial review remove safeguards that protect against an abuse of discretion by the Attorney General. It is true that the APA provides procedural protections to ensure that executive agencies conform to the standards set out in the legislation. *See Davis,* 564 F.2d at 844. Nonetheless, the absence of notice and public comment does not render section 811(h) a constitutionally infirm delegation of legislative power. The temporary scheduling of a controlled substance is an emergency measure, lasting at most eighteen months. Requiring lengthy public comment could jeopardize the public safety sought to be protected by temporary scheduling.

Nor do we believe that section 811(h)(6)'s preclusion of "judicial review" invalidates the statute under a separation of powers theory. We have held that the section is subject to constitutional review. Temporary scheduling orders are thus reviewable to ensure compliance with the fifth amendment's guarantee of due process. *See supra* section I. Even assuming that section 811(h)(6) bars all judicial review of scheduling orders to determine their compliance with the statutory requirements of section 811(h), we do not find this unconstitutional. A constitutionally imposed requirement of judicial review to ensure compliance with statutory standards would invalidate many statutes precluding judicial review. *See* 5 U.S.C. § 701(a)(1) (judicial review under APA is unavailable if the relevant statute precludes it). Such a requirement would contravene the decisions denying judicial statutory review of the executive's exercise of legislatively delegated powers. *See, e.g., Block v. Community Nutrition Inst.,* 467 U.S. 340, 348, 104 S.Ct. 2450, 2455, 81 L.Ed.2d 270 (1984) (denying consumer's suit for review of Secretary of Agricul-

ture's market orders setting price limits for dairy products under authority of the Agricultural Marketing Agreement Act of 1937); *see also Heckler v. Chaney,* 470 U.S. 821, 838, 105 S.Ct. 1649, 1659, 84 L.Ed. 2d 714 (1985) (distinguishing statutory review from constitutional review and leaving for Congress—not the courts—the decision whether an agency's refusal to institute proceedings should be judicially reviewable); *Rosen v. Walters,* 719 F.2d 1422, 1423 (9th Cir.1983) (upholding statute's preclusion of review of denial of benefit payments by Administrator of Veterans Administration). We conclude that section 811(h) is a permissible delegation of congressional power.

### B. Due Process

■ Defendants also challenge section 811(h) as an inappropriate means to protect the public safety. Defendants argue that two aspects of the temporary scheduling procedure are arbitrary and irrational and therefore violate due process of law. First, the temporary procedure requires all temporarily scheduled drugs be placed in Schedule I. Second, the procedure's "necessary to avoid an imminent hazard to the public safety" standard withdraws consideration of scientific evidence, the drug's dependence liability, and whether the precursor of the substance is already controlled. Defendants assert no fundamental right to distribute controlled substances. Thus, to successfully assert a substantive due process claim they must "overcome a presumption of constitutionality" and show that Congress " 'has acted in an arbitrary and irrational way.' " *National R.R. Passenger Corp. v. Atchison, T. & S.F. Ry. Co.,* 470 U.S. 451, 472, 105 S.Ct. 1441, 1455, 84 L.Ed.2d 432 (1985) (quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 729, 104 S.Ct. 2709, 2717, 81 L.Ed.2d 601 (1984)).[2]

Section 811(h) clearly survives rationality review. Harsh punishment of those who distribute substances posing "an imminent hazard to the public safety" is not an irra-

tional means of reducing that hazard. The fact that no scheduling distinction is made between those drugs found by the Attorney General to pose varying degrees of imminent hazard does not affect section 811(h)'s rationality. In *Williamson v. Lee Optical,* 348 U.S. 483, 487–88, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955) the Court held that "the law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." Likewise, Congress' dispensing with scientific evaluation of a substance does not make section 811(h) irrational. Given the need for immediate action to protect public safety, the Attorney General's determination of an imminent threat to that safety is a reasonable basis for scheduling substances on a temporary basis.

Temporary scheduling lasts, for the most, eighteen months. 21 U.S.C. § 811(h)(2). An individual must refrain from distributing a substance during its temporary placement on Schedule I. When the consideration of permanent scheduling begins, generally before the end of the temporary classification, an individual has the opportunity to participate in hearings. After the permanent scheduling decision, the individual may petition for judicial review. In the case of MDMA, a doctor's petition to the First Circuit for review of MDMA's permanent Schedule I classification succeeded: the court vacated the Schedule I placement and remanded the rule to the Administrator. *Grinspoon v. Drug Enforcement Admin.,* 828 F.2d 881, 891 (1st Cir.1987). Section 811(h) serves the need for a summary procedure to protect the public safety, without seriously impairing the rights of individuals.

### III. SUBDELEGATION OF TEMPORARY SCHEDULING AUTHORITY TO ADMINISTRATOR

■ Defendants also argue that the Attorney General has failed to subdelegate

---

**2.** The fact that section 811(h) is a criminal statute does not mandate a more searching inquiry than rational basis review. *See, e.g., United States v. Alexander,* 673 F.2d 287, 288 (9th Cir.)

(substance classification under 21 U.S.C. § 812 "need not be perfect or ideal," only rational and reasonable), *cert. denied,* 459 U.S. 876, 103 S.Ct. 168, 74 L.Ed.2d 139 (1982).

his temporary scheduling function to the Administrator. In 1973, the Attorney General delegated to the Administrator those "[f]unctions vested in the Attorney General by the Comprehensive Drug Abuse Prevention and Control Act of 1970." 28 C.F.R. § 0.100(b) (1986). The Controlled Substances Act was part of this act. *See* 84 Stat. at 1236, 1242 (1970). The Attorney General's power to schedule substances permanently under 21 U.S.C. § 811(a), enacted pursuant to the Controlled Substances Act, thus clearly has been delegated to the Administrator. *See United States v. Burnes*, 816 F.2d 1354, 1359–60 (9th Cir.1987) (delegation to Administrator includes permanent rescheduling of controlled substances); *United States v. Lippner*, 676 F.2d 456, 461 (11th Cir.1982) (permanent scheduling authority may be subdelegated); *United States v. Gordon*, 580 F.2d 827, 840 (5th Cir.) (same), *cert. denied*, 439 U.S. 1051, 99 S.Ct. 731, 58 L.Ed.2d 711 (1978).

Defendants contend, however, that the Attorney General has not similarly delegated his *temporary* scheduling authority to the Administrator. They point out that section 811(h) was enacted not in the 1970 Controlled Substances Act, but rather in the 1984 Act. Defendants argue that only by specifically delegating his authority under the 1984 Act could the Attorney General assign to the Administrator temporary scheduling authority under section 811(h). The interpretation of the Attorney General's 1973 authorization order is a question of law which we review de novo. *Cf. Trustees of Amalgamated Ins. Fund v. Geltman Indus.*, 784 F.2d 926, 929 (9th Cir.) (de novo review for statutory interpretation), *cert. denied*, ⸺ U.S. ⸺, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986).

We hold that the Attorney General's 1973 delegation of permanent scheduling to the Administrator does not apply to the power to schedule drugs temporarily under the 1984 Act. In so holding, we are in agreement with the Tenth Circuit's recent decision in *United States v. Spain*, 825 F.2d 1426 (10th Cir.1987). *See also United States v. Hovey*, 674 F.Supp. 161, 169–70 (D.Del.1987) (following *Spain*). We are reluctant to create a direct conflict with the Tenth Circuit, criminalizing behavior in our jurisdiction which is not proscribed in another. Further, like the Tenth Circuit, we conclude that the differences between sections 811(a) and 811(h) are so marked that we may not assume that the Attorney General's delegation of his authority under section 811(a) was intended to encompass the emergency powers granted to him eleven years later by section 811(h).

First, to schedule a drug temporarily under section 811(h), the Attorney General must consider only three of the eight factors required for permanent scheduling under section 811(a): the substance's "history and current pattern of abuse," the "scope, duration, and significance of abuse," and the "risk ... to the public health." 21 U.S.C. § 811(c)(4)–(6). Although the Administrator considers these factors when evaluating whether to schedule a drug permanently, the inquiry in that case is quite different. Before the Administrator may place a drug on Schedule I, section 811(a)(1)(B) also requires findings that the drug has "a high potential for abuse," "no currently accepted medical use in treatment in the United States," and that "[t]here is a lack of accepted safety for use of the drug ... under medical supervision." 21 U.S.C. § 812(b)(1). Section 811(h), in contrast, requires no findings at all.

A second difference between the two procedures is that section 811(a) requires a hearing and public comment as specified in the APA, 5 U.S.C. § 555. Section 811(h) does not. It does not follow that because the Attorney General delegated to the Administrator the authority for permanent scheduling with the support of required hearings and findings, the Administrator is automatically authorized to make a temporary scheduling decision entirely on his own under the summary procedure of section 811(h).

The third major difference between permanent and temporary scheduling further emphasizes the unilateral nature of the decision to schedule a drug under section 811(h). Before permanent scheduling, the Administrator must request a scientific and

medical evaluation and recommendations from the Secretary. The Secretary must submit the evaluation and recommendation in writing, and the recommendation is *binding* on the Administrator. 21 U.S.C. § 811(b). In sharp contrast, section 811(h) requires only that the notice of temporary scheduling be transmitted to the Secretary, who need not respond at all. Any comments the Secretary might choose to make need only be "taken into consideration." Section 811(h)(4). Further, as discussed above, section 811(h)(6) exempts temporary scheduling orders from judicial review. Section 811(h) thus leaves almost unfettered discretion in the Attorney General. The delegation of that discretion should be explicit.[3]

The government argues that when in 1973 the Attorney General delegated his authority to schedule substances permanently under the Controlled Substances Act of 1970, he impliedly delegated his authority under any amendment to the Act. Any other interpretation, according to the government, would require a new delegation any time an amendment, however minor or technical, is added to the Act. Our holding does not dictate that result. As discussed above, it is because section 811(h) is an almost entirely different procedure, and the Administrator's role in that new procedure would be so fundamentally altered, that a specific delegation of temporary scheduling authority is necessary. Section 811(h) is more than a mere amendment; changes to the Act that do not propose such an altered role for the Administrator would not necessarily require explicit delegation. For example, in 1984, Congress also amended section 811(g) to provide for the exemption of certain mixtures containing controlled substances. 21 U.S.C. § 811(g)(3) (Supp. III 1985). The Administrator's authority to exempt such a mixture would appear to fall within the

scope of the authority delegated to him in 1973.

Nor is it persuasive to cite, as the government does, the subsequent actions of Congress or the Attorney General as evidence of the intent to delegate temporary scheduling to the Administrator. A failure to challenge or correct the Administrator's actions, or even tacit approval of those actions, is not a substitute for express delegation by the Attorney General. If delegation is to be accomplished by omission, any opportunity for prior review, however lenient, of the propriety of delegation is lost.

We emphasize, however, that our conclusion that temporary scheduling was not properly delegated to the Administrator does not imply that any such subdelegation would be inappropriate. The Tenth Circuit has questioned whether Congress intended to permit the Attorney General to subdelegate his temporary scheduling authority. *Spain*, 825 F.2d at 1428–29. We do not reach that issue here. Nor do we suggest that the Administrator is necessarily an inappropriate official to make the determination that temporary scheduling is necessary. We simply hold that the delegation of permanent scheduling does not encompass delegation of the very different function added to the statute eleven years after its first enactment.

## IV. VALIDITY OF THE MDMA SCHEDULING ORDER

Because we hold that the Attorney General did not delegate his temporary scheduling authority to the Administrator, we do not reach the issue of whether the order placing MDMA on Schedule I was otherwise proper or whether the Administrator's order met section 811(h)(1)'s procedural requirements. *But see Caudle*, 828 F.2d at 1112 (order ineffective because no thirty-day notice); *Spain*, 825 F.2d at 1429 (ques-

---

**3.** On July 1, 1987, the Attorney General amended 28 C.F.R. § 0.100(b) to delegate to the Administrator "functions which may be vested in the Attorney General in subsequent amendments to the Comprehensive Drug Abuse Prevention and Control Act of 1970, and not otherwise specifically assigned or reserved by him."

28 C.F.R. § 0.100(b) (1987). The government has not brought this amendment to our attention, nor has it argued its applicability. Whether this amendment delegates the temporary scheduling function to the Administrator is not before us on this appeal.

tioning the propriety of the "premature" order).

## CONCLUSION

The Administrator's temporary scheduling of MDMA was an improper exercise of authority not delegated to him by the Attorney General. The judgments of conviction of the defendants are REVERSED.

WIGGINS, Circuit Judge, dissenting:

Because I disagree with the majority's conclusion that the Attorney General failed properly to subdelegate to the Administrator of the Drug Enforcement Agency (DEA) his authority to schedule dangerous, new, "designer" drugs temporarily, I dissent.

I do not share the majority's narrow reading of the Attorney General's authorization order for delegation of his duties to the DEA. 28 C.F.R. § 0.100(b) (1986). Although the temporary scheduling procedure of section 811(h) was not part of the original 1970 Controlled Substances Act, it expressly amended the 1970 Act. 21 U.S.C. § 811(h) (1982 & Supp.1984). It would be a strained and unreasonable interpretation of the Attorney General's authorization order to read it as invalidating all actions taken by the DEA's Administrator under amendments to the 1970 Act. The 1973 subdelegation clearly contemplated the DEA's assumption of the Attorney General's permanent substance scheduling function. The 1984 Act amended the scheduling function to include temporary scheduling.[1]

The majority, however, adopts wholesale the analysis of *United States v. Spain*, 825 F.2d 1426 (10th Cir.1987), and rules to the contrary. I believe *Spain* was premised on two false assumptions: (1) that whether the Attorney General had subdelegated his temporary scheduling authority depended on the degree of similarity between that process and the permanent scheduling process, and (2) that these two processes were wholly dissimilar. As for the second assertion, the *Spain* decision considered temporary scheduling to be fundamentally different from permanent scheduling. *Id.* at 1428. The court stated that the DEA is a "technical group" incompetent to determine, under section 811(h)(1), whether temporary scheduling is necessary to avoid imminent danger to the public safety. *Id.* *Spain* found this general public safety decision to be within the Attorney General's special expertise, and therefore it concluded that the Attorney General would not have intended the 1973 subdelegation to extend to temporary scheduling authority. *Id.*

However, in determining the threat to the public safety under section 811(h)(1), the substance's "history and current pattern of abuse," the "scope, duration, and significance of abuse," and "risk ... to the public health" must be considered. 21 U.S.C. § 811(c), (h)(3). These general public safety considerations are among those that must be considered when determining a substance's "potential for abuse" for permanent scheduling under section 811(a)(1). *See id.* § 811(a)(1), (c). The Attorney General has entrusted the Administrator with determining a substance's threat to the public safety when exercising permanent scheduling authority, and I do not believe he would consider the DEA incompetent to make essentially the same inquiry when temporarily scheduling a substance.[2]

---

1. *See* Pub.L. No. 98–473, tit. II, § 508, 98 Stat. 2070, 2071–72 (1984) ("21 U.S.C. 811 ... is amended by adding a new subsection (h) as follows...."). Temporary scheduling is one of the Attorney General's functions under the Controlled Substances Act, and is therefore delegable under 21 U.S.C. § 871(a). Additionally, 28 U.S.C. § 510 generally permits the Attorney General to delegate to "any other officer, employee, or agency of the Department of Justice ... any function of the Attorney General."

2. The *Spain* decision also stated that the Attorney General would not intend to permit the Administrator to exercise the broad discretion involved in scheduling a substance temporarily. 825 F.2d at 1429. The discretion given under section 811(h), however, is comparable to that given in permanently scheduling substances under section 811(a). For example, although the Secretary of Health and Human Services may not veto a temporary scheduling order, her recommendation must still be considered. 21 U.S.C. § 811(h)(1), (4). The *Spain* decision ob-

I believe, therefore, that the temporary scheduling process is not so different from the permanent scheduling process. And even if it were, I do not think that would require a holding that subdelegation had not been perfected in this case. The court in *Spain* relied on the rule that ambiguous criminal statutes be read narrowly and with lenity in order to interpret the Attorney General's 1973 delegation to the Administrator as not extending to temporary substance scheduling 825 F.2d at 1429 (citing *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), and *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955)). Assuming, *arguendo*, that the rule of lenity applies to situations in which the criminal prohibition itself is clear but the authority to proscribe the activity is doubtful,[3] I do not find the 1973 delegation to be ambiguous. The Attorney General in 1973 unquestionably delegated to the Administrator his functions under the Controlled Substances Act, and temporary scheduling is clearly one of the Attorney General's functions under the Controlled Substances Act as amended. I decline to construe the 1973 delegation so strictly as to defeat the Attorney General's obvious intention to permit the Administrator temporarily to schedule substances. *Cf. Huddleston v. United States*, 415 U.S. 814, 831, 94 S.Ct. 1262, 1271, 39 L.Ed.2d 782 (1974) ("Although penal laws are to be construed strictly, they 'ought not to be construed so strictly as to defeat the obvious intention of the legislature.'") (quoting *American Fur Co. v. United States*, 27 U.S. (2 Pet.) 358, 367, 7 L.Ed. 450 (1829)). This is not the case of a rogue agency usurping the Attorney General's authority. If the Attorney General did not intend the Administrator to schedule substances temporarily under the 1973 delegation, I am

confident he would have acted to reduce the Administrator's authority.

I believe the plain intent of Congress was to establish an expedited system of review in order to criminalize the possession, manufacturing, and distribution of newly-developed "designer" drugs *before* they became public health hazards. The responsibility for this temporary scheduling process was vested sensibly in the DEA, through the Attorney General. The majority's decision requires that when any amendment to a crime-fighting statute is adopted, no matter how technical or minor, a new trail of delegation and subdelegation be laid down, even when past delegation practice is clear and unambiguous. The majority's decision vacates a criminal conviction because of an alleged lack of proper delegation of authority. I believe the majority demands too much of the government's crime-fighting efforts in the face of an unambiguous delegation of responsibility by Congress.

I respectfully dissent.

---

served that temporary scheduling, unlike permanent scheduling, is not subject to the Administrative Procedure Act's procedural protections. 825 F.2d at 1429. I do not find this factor alone to be dispositive of the Attorney General's intent underlying the 1973 order.

**3.** The purpose of the rule is to ensure that "no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited."

*Dunn v. United States*, 442 U.S. 100, 112, 99 S.Ct. 2190, 2197, 60 L.Ed.2d 743 (1979). Here, the defendants were on notice that their conduct was prohibited: the Controlled Substances Act plainly prohibits distributing and conspiring to distribute controlled substances, and the Administrator had plainly scheduled MDMA as a controlled substance.