UNITED STATES

v.

Airman First Class Joel E. LOFTIN, FR 450–33–2258, United States Air Force.

ACM 26957.

U.S. Air Force Court of Military Review.

Sentence Adjudged 11 May 1988.

Decided 17 March 1989.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Mark R. Land.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Major Kathryn I. Taylor.

Before LEWIS, BLOMMERS and KASTL, Appellate Military Judges.

## DECISION

KASTL, Senior Judge:

Like the appellant in *United States v. Tyhurst*, 28 M.J. 671 (A.F.C.M.R.1989), Air-man First Class (A1C) Loftin was convicted of numerous drug offenses under Article 112a, UCMJ, 10 U.S.C. § 912a. He was found guilty of assault and absence without leave as well, in violation of Articles 128 and 86, UCMJ, 10 U.S.C. §§ 886, 928.[1] As in *Tyhurst*, this appellant offered a conditional plea to wrongful use of a prohibited substance, an analog drug of 3, 4–methylenedioxy amphetamine, known as MDMA or "Ecstasy."[2]

I

The drug offenses were charged under Article 112a, UCMJ. That Article, among other things, prohibits the use and distribution of "controlled substances." These substances are particularized in paragraphs 37a(b)(1) through (3) of the Manual for Courts–Martial, 1984. The following are declared illegal: first, specific items, including opium, heroin, marijuana, and the like, as well as their compounds and derivatives; second, substances appearing on a schedule prescribed by the President; and third, any other item not covered in the first two categories but "listed in Schedules I through V of ... 21 U.S.C. 812," which is a continually updated list of prohibited substances appearing within the United States Code.

In 1986, Congress expanded Federal anti-drug efforts and passed a new measure to combat illegal synthetic drugs, the Controlled Substance Analogue Enforcement Act. These substances have a chemical structure slightly different from an existing drug but have parallel effects on the mind and body. A fuller exposition of the legal ramifications of these so-called designer drugs appears in *United States v. Tyhurst, supra.* The Analogue Act, at 21 U.S.C. § 813, provides that an analog will, to the extent intended for human consumption, be treated as a controlled substance in Schedule I of 21 U.S.C. § 812. When passing the Analogue Act, Congress specifically

---

1. This case was combined with *United States v. Tyhurst,* 28 M.J. 671 (A.F.C.M.R.1989), for oral argument.

2. This accused used the synthetic drug known as MDMA or "Ecstasy;" the appellant in *United States v. Tyhurst, supra,* used another analog drug which was, nonetheless, called "Ecstasy" by trial participants.

added a definition of "controlled substance analog" at 21 U.S.C. § 802(32)(B)(i); as part of that definition, Congress stated that such an analog *"does not include a controlled substance"* (emphasis added). After a protracted history which will be developed later in this opinion, MDMA or "Ecstasy" was placed on Schedule I as a prohibited substance.

At trial, the defense entered a conditional plea to this specification. The defense insisted that one must begin analysis of the offense alleged by examining the term "controlled substance analog" as delineated by Congress. The term was newly-defined in the Analogue Act, noted the defense, and said definition specifically excluded *controlled* substances. *See* 21 U.S.C. § 802(32)(B)(i). The Government chose to place MDMA or "Ecstasy" into Schedule I, the defense contended, and that election removed "Ecstasy" from the Analogue Act by any fair reading of the definition at Section 802(32). In short, the defense argued that the Government could not rely upon Section 813 (the Analogue Act) as the basis for prosecuting A1C Loftin since "Ecstasy" had been placed into Schedule I [3] under 21 U.S.C. § 812. That election, according to the defense, made MDMA a Section 812 "controlled substance" and removed it from Section 813 treatment as an analog. Consequently, the defense claimed, A1C Loftin's conduct could not be punished under 21 U.S.C. § 813 as assimilated by Article 112a.

The military judge denied the defense motion and made specific findings. He noted that the Government was relying on 21 U.S.C. § 813 to establish that a proper offense had been charged. The judge found that: (a) the Federal schedule listing of banned substances already included a parent drug known as 3, 4–methylenedioxy amphetamine; (b) "Ecstasy" was an analog of that parent; and thus (c) "Ecstasy" would be incorporated into the Federal schedule as a controlled substance under 21 U.S.C. § 813.

## II

We believe that the appellant's conviction can be upheld for a far more basic reason. Simply stated, we hold that A1C Loftin is guilty of violating Article 112a because Article 112a makes it illegal for members to use substances listed in Schedule I of Title 21 of the United States Code. "Ecstasy" was a Schedule I illegal substance during the timeframe ultimately charged; therefore, its use is punishable under Article 112a.

We are satisfied that, from the fall of 1986 until 18 September 1987, "Ecstasy" was a Schedule I substance. We believe that its classification on that schedule constitutes a valid and rational decision even though the analog may not pharmacologically be a "drug." *See United States v. King,* 6 M.J. 927, 931 (A.F.C.M.R.1979). Contrariwise, for reasons developed at length in *United States v. Tyhurst, supra,* we find this appellant may not be punished under military law, as it is presently written, under 21 U.S.C. § 813, the Controlled Substances Analogue Enforcement Act.

## III

At trial, the defense motion for relief posited that "Ecstasy" had been a Schedule I controlled substance since July of 1985. Unfortunately, we believe the facts—and their legal consequences—are far more complex. We must recite some of the details to identify a correct beginning and ending date for the accused's criminality. The data may provide guidance for military practitioners as well in this extremely difficult area.

By way of background, the substance 3, 4–methylenedioxy methamphetamine (MDMA), street named "Ecstasy," is not a new drug. It was first synthesized in 1914 by the Merck Company as an appetite suppressant.[4] At least by the early 1980's

---

**3.** Federal drug laws list five categories of substances subject to control. After initial screening the substance appears in one of five categories. Schedule I substances draw the most severe penalties.

**4.** *See* Note, *The Emergence and Emergency of Designer Drugs: Subdelegation of the Power*

Federal authorities were becoming concerned with the growing popularity of "Ecstasy," which is chemically related to mescaline. These authorities used two weapons to attack MDMA and other designer drugs. First, 21 U.S.C. § 811 gave the Attorney General power to *permanently* enter substances into five Federal drug schedules after making necessary findings and following lengthy hearing procedures. Second, 21 U.S.C. § 811(h), added in 1984, permitted the Attorney General to *temporarily* place drugs into Schedule I to avert imminent hazards to the public.

In January 1984, the Administrator of the Drug Enforcement Administration (DEA)—who had been delegated authority by the Attorney General—proposed to ban "Ecstasy" permanently. *See* 49 Fed.Reg. 30,210 (1984). DEA received various comments and requests for a hearing. An Administrative Law Judge was appointed and began hearings in July 1984; they were to last for two years.

While hearings were under way concerning a permanent bar to MDMA under the traditional Federal drug schedule, the DEA utilized its newer, streamlined emergency procedures to declare "Ecstasy" *temporarily* unlawful for one year beginning in July of 1985. *See* 49 Fed.Reg. 23,118 (1985).

In the meantime, the Administrative Law Judge had completed hearings; he concluded that MDMA should be regulated, but as a Schedule III substance. DEA declined to accept the Administrative Law Judge's reasoning. In October 1986 the Administrator issued a notice placing "Ecstasy" permanently on Schedule I. *See* 51 Fed.Reg. 36,552 (1986). After several court challenges, DEA ultimately issued another final order with an effective date of March 1988. *See* 21 C.F.R. Section 1308.11 (1988).

A psychiatrist challenged the DEA's ruling which made MDMA a permanent Schedule I entry in *Grinspoon v. DEA*, 828 F.2d 881 (1st Cir.1987). The plaintiff claimed "Ecstasy" was useful to patients in

therapy. The court agreed that DEA had used defective criteria in its administrative decision. In an opinion published on 18 September 1987, it vacated DEA's *permanent* determination that "Ecstasy" should be indexed as a Schedule I substance and remanded the matter for further DEA consideration.

The attack on DEA rulings also extended to its *temporary* ban on MDMA. In several cases, it was argued successfully that the DEA Administrator was barred from employing the *temporary* scheduling process to ban substances such as "Ecstasy." Two significant theories supported the claim that the DEA Administrator possesses no temporary scheduling power. First, in *United States v. Spain*, 825 F.2d 1426 (10th Cir.1987), the conclusion was reached that the Attorney General's overall subdelegation of power to the DEA Administrator to schedule drugs temporarily was invalid. The case is far from crystal clear, but it appears to hold that an executive agency such as the DEA cannot assert sweeping power to first criminalize conduct and then prosecute it. This is a Constitutional argument premised on the concept of separation of powers.[5] In addition, cases such as *United States v. Emerson*, 846 F.2d 541 (9th Cir.1988), acknowledge the clear-cut delegation of power from the Attorney General to the DEA Administrator in 1973 permitting *permanent* scheduling by the Administrator as delegee; however, this 1973 provision did not extend to *temporary* scheduling under emergency procedures enacted in 1984, some 11 years later. The *Spain* analysis is based on Constitutional concerns inherent in permitting the DEA to be both policymaker and enforcer. The *Emerson* analysis revolves around delegation of powers, statutory construction, and correct procedure. *See also United States v. Hovey*, 674 F.Supp. 161, 169–170 (D.Del.1987) and *United States v. Pees*, 645 F.Supp. 697 (D.Colo.1986).

IV

As we apply these precedents to the present case, two concerns arise. First, as

---

*Temporarily to Schedule in Light of United States v. Spain,* 14 Am.J.Crim.Law 257, 259 n. 6 (1988).

**5.** *Id.* at 275.

stated in *Spain* and *Emerson,* various Constitutional and procedural questions would arise if we were to uphold a court-martial conviction under Article 112a on the theory that MDMA is banned under the *temporary* scheduling power of the DEA Administrator. Second, *Grinspoon* indicates that the DEA determination to place "Ecstasy" *permanently* on Schedule I was returned to the Administrator for further hearings; as noted earlier, that Federal court decision was issued on 18 September 1987.

We hold that A1C Loftin illegally used "Ecstasy" from 13 November 1986 until 18 September 1987. During this timeframe, we conclude that "Ecstasy" was properly listed as a Schedule I substance.

As for the first date: At trial, the Government claimed the appellant had wrongfully used MDMA, in violation of Article 112a, beginning on 27 October 1986. Since the effective date for "Ecstasy" being banned under Schedule I was 13 November 1986, the initial date of the offense must be amended to 13 November 1986. *See* Fed.Reg. 36,552 (1986).

As for the second date: At trial the Government and appellant stipulated that his offense continued until on or about 18 September 1987. We have no difficulty with the 18 September date. We have already said here and in *United States v. Tyhurst, supra,* that 21 U.S.C. § 813 is not a valid basis to sustain a conviction under Article 112a, UCMJ. Moreover, we have also indicated in our analysis that a conviction may be upheld under Article 112a for using a substance properly placed on Schedule I. The date on which the Federal Court in *Grinspoon* vacated the Administrator's permanent determination that "Ecstasy" might be indexed on Schedule I is 18 September 1987. Since prior to 18 September 1987 the substance was listed on Schedule I, we can uphold a conviction from 13 November 1986 until 18 September 1987. We emphasize that *Grinspoon* did not say the DEA erred in placing MDMA within a Federal schedule. The sole issue on remand to the DEA Administrator was to which schedule it should be assigned. Accordingly, we have no difficulty in holding that A1C Loftin's use of "Ecstasy" prior to 18 September 1987 was an offense.

Utilizing these dates, we find appellant guilty of wrongful use of MDMA between 13 November 1986 and 18 September 1987. To summarize once again why these dates are appropriate: 13 November 1986 is the day on which MDMA first was placed on Schedule I; 18 September 1987 is the date on which the Federal Court of Appeals in *Grinspoon* vacated DEA's permanent determination. Therefore, between 13 November 1986 and 18 September 1987, the appellant's conviction may stand as to this offense.

We do not find the very recent case of *United States v. Desurra,* 865 F.2d 651 (5th Cir.1989) contrary authority to our analysis. In *Desurra* the court found 21 U.S.C. § 813 a valid basis for prosecuting use of MDMA. The defendants attempted to argue that DEA's efforts to list "Ecstasy" as a Schedule I drug equated to transforming it into a "controlled substance" so that it must be prosecuted under traditional drug procedures and not under 21 U.S.C. § 813, the Analogue Act. The timeframe in question was July of 1987. Addressing that time, the court noted that DEA's effort to list MDMA on Schedule I was unsuccessful, thus permitting prosecution under the Analogue Act; thus, the Analogue Act was a proper vehicle for charging. It is unclear from the short, *per curiam* opinion whether the question of "Ecstasy" as a legitimate Schedule I drug was litigated fully between the parties. We do not find *Desurra* persuasive as authority contrary to our analysis here. In any event, to the degree *Desurra* suggests that "Ecstasy" is punishable solely under the Analogue Act, 21 U.S.C. § 813, and not as a Schedule I drug, we decline to follow it.

## V

■ We recognize that *United States v. Tyhurst* and the present case have illustrated a complex puzzle for military justice practitioners who must charge offenses involving designer drugs such as "Ecstasy." We have these observations. First, any substance appearing on Schedules I through V is properly chargeable under Article 112a. *United States v. King, supra.* Second, if the substance is not listed

in the five schedules, it is not chargeable under Article 112a. We have not foreclosed the possibility of charging the matter under Article 134 as a crime and offense not capital. *See generally United States v. Desurra, supra; United States v. Ettleson,* 13 M.J. 348 (C.M.A.1982), *United States v. Reyes–Ruiz,* 16 M.J. 784 (A.C.M. R.1983); *see also United States v. Thurman,* 7 M.J. 26 (C.M.A.1979), and *United States v. Frostell,* 13 M.J. 680 (N.M.C.M.R. 1982). This option, however, would force the prosecution to face the numerous technical and constitutional objections which may exist as to 21 U.S.C. § 813, as well as the matter of extra-territorial application. *See United States v. Ettleson, supra.*

So much of the findings of specification 2 of the Charge as finds that the appellant wrongfully used a substance known as "Ecstasy," a Schedule I controlled substance, under Title 21, United States Code, from on or about 13 November 1986 to on or about 18 September 1987, a violation of Article 112a, UCMJ, is approved.

■ A1C Loftin was sentenced by a military judge sitting alone to a bad conduct discharge, four years of confinement, total forfeitures, and reduction to airman basic. He was convicted of use and distribution of a number of illegal substances, to include marijuana, lysergic acid diethylamide, and cocaine. He assaulted a civilian and was absent from duty for two days. Upon our own independent review, we are convinced that the sentence is appropriate. *See generally United States v. Sales,* 22 M.J. 305 (C.M.A.1986).

The findings of guilty, as modified, and the sentence, are correct in law and fact and, on the basis of the entire record are

AFFIRMED.

Senior Judge LEWIS concurs.

Judge BLOMMERS (concurring):

I concur in the result. See my separate opinion in *United States v. Tyhurst,* 28 M.J. 671 (A.F.C.M.R.1989).