**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Franklin BARRON, Daniel James Frey, and Duane Lee Johnson,
Defendants-Appellants.**

**Nos. 77–1743, 77–1744 and 77–1745.**

United States Court of Appeals,
Tenth Circuit.

Submitted Jan. 22, 1979.

Decided March 21, 1979.

Certiorari Denied May 14, 1979.
See 99 S.Ct. 2180.

---

James P. Buchele, U. S. Atty., Topeka, Kan. (Bruce E. Miller, Asst. U. S. Atty., Topeka, Kan., on the brief), for plaintiff-appellee.

Ira R. Kirkendoll, Asst. Federal Public Defender, Topeka, Kan. (Leonard D. Munker, Federal Public Defender, Wichita, Kan., on the brief), for defendants-appellants Barron and Johnson.

Raymond S. Menendez of Menendez & Mettner, Topeka, Kan., submitted on brief for defendant-appellant Frey.

Before SETH, Chief Judge, and BREITENSTEIN and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The defendants John Franklin Barron, Daniel James Frey and Duane Lee Johnson, were named, together with four others (a total of seven), in an indictment charging various violations of 21 U.S.C. § 841, possessing with intent to distribute methamphetamine, a Schedule II controlled substance. In addition, Johnson was charged with distributing methamphetamine and with conspiring and agreeing to distribute methamphetamine. Similarly, defendant John Franklin Barron was charged with possession, distribution, attempted distribution and conspiracy to distribute methamphetamine. Daniel James Frey was charged in Count II with knowingly and intentionally possessing with intent to distribute methamphetamine and in Count III with knowingly and intentionally distributing a quantity of methamphetamine and in another transaction with knowingly and intentionally possessing with intent to distribute methamphetamine, and in two other counts with knowingly possessing and distributing methamphetamine and with conspiring to distribute the same drug.

The defendants Frederick F. Smith, Christopher Alan Bullard, David E. Browning, Jr. and Richard Lee Reser entered pleas of guilty or nolo contendere at various stages of the proceedings. Frederick Smith has been a government informer for some time prior to the events here described. He entered a plea of guilty to use of a communication facility to distribute methamphetamine and testified as a government witness.

Richard Lee Reser entered a plea of guilty to two counts of distribution of methamphetamine. He also testified as a government witness.

David E. Browning, Jr. entered a plea of nolo contendere to one count of possession of methamphetamine with intent to distribute. Browning, however, did not testify.

Christopher Alan Bullard, at the end of the Government's case, entered a plea of guilty to Counts III and X, distribution of methamphetamine and conspiring to do so. The government reopened and sought and obtained permission from the court to call Bullard as a witness.

From the first, Frederick F. Smith worked with the government and Agent Christy.[1] Smith obtained samples of so-called speed from defendant Barron and turned it over to Agent Christy. This was in January 1977.

Again, on February 1, 1977, Smith communicated with defendant Barron in regard to obtaining drugs and talking price. Smith said that he had a buyer, and Barron

---

1. Smith was also shown to have simultaneously participated in the criminal efforts on his own behalf.

said he could obtain various drugs at various prices. This conversation was recorded and is part of the record.

Smith and Agent Christy had discussions in February 1977, with respect to Smith's purchase of drugs. Smith arranged with Barron to buy four ounces of methamphetamine for Agent Christy, who was using the name Harvey Wallace. Barron undertook to obtain the drug from defendant Bullard. As a result, four ounces of methamphetamine were sold and were delivered at Barron's residence in Topeka on February 23, 1977. Christy paid $4,800 in cash. Frey participated in this transaction by delivering the methamphetamine to Barron. Bullard received payment from Barron after Smith and Christy had left Barron's house. Smith testified at length concerning all of this. Smith was shown to have benefited personally from the transaction in terms of money and drugs.

The testimony of Agent Christy described the transactions in question also at length. Two days after the transaction described above, Barron contacted Smith in order to contact Christy. Subsequently, Barron talked to Christy and these conversations were recorded. He offered Christy a pound of methamphetamine for $14,000. There was a discussion of an even larger quantity, five pounds. There was also a discussion of *Smith's* having been busted. Barron said that he trusted Smith.

There was a meeting described by Christy between him and Agent Sparks on the one hand, and defendants Reser and Barron on the other, in which the latter tried to sell one and one-half pounds of methamphetamine. Subsequently, arrangements were made by Reser and Barron to sell one and one-half pounds of methamphetamine rather than the five pounds that had been discussed.

Prior to the delivery, Barron and Reser insisted on seeing the money, and Christy and Sparks counted out $18,550 in cash. This was done in the agents' motel room. Subsequently, the sale of this one and one-half pounds was completed in a parking lot. At that time Reser and Barron were arrested, and Johnson and Browning, who were watching it, were arrested across the street.

Barron offered to cooperate with Sparks and Christy. Subsequently, Bullard and Frey agreed to purchase drugs, but did not go through with the transaction.

There was testimony from Christy and Sparks and also from three codefendants, Bullard, Frey and Smith. Browning did not testify. There was also testimony from one Steve Jones, chemist, who identified certain of the drugs as methamphetamine.

Barron was convicted on two counts of knowingly and intentionally possessing a Schedule II controlled substance with intent to distribute, with three counts of knowingly and intentionally distributing methamphetamine, with one count of knowingly and intentionally attempting to violate 21 U.S.C. § 841(a)(1), and with one count of willfully and knowingly combining, conspiring and confederating with the other defendants to distribute methamphetamine contrary to 21 U.S.C. § 846.

Johnson was convicted on one count of the knowing and intentional possession of methamphetamine with intent to distribute and with two counts of knowingly and intentionally distributing methamphetamine. He was also found guilty of willfully and knowingly conspiring to distribute methamphetamine in violation of 21 U.S.C. § 846.

Defendant Frey was convicted on one count of possession with intent to distribute methamphetamine and one count of distribution, both being in violation of 21 U.S.C. § 841(a)(1); with one count of attempting to violate 21 U.S.C. § 841(a)(1); and one count of conspiring in violation of 21 U.S.C. § 846.

The contentions are:

1. Defendant Johnson maintains that the evidence was insufficient to support the jury verdicts of guilty as to him.

2. Defendant Barron contends that the doctrine of entrapment applies to him.

3. All of the defendants maintain that the testimony of Smith and Reser should have been stricken and the court erred in denying the motion to do so.

4. Defendant Frey argues that he is entitled to severance from the other defendants.

5. Frey also maintains that there was insufficient evidence to justify the jury's verdicts as to him.

## I.

### SUFFICIENCY OF THE EVIDENCE AS TO JOHNSON

Richard Lee Reser testified regarding his long acquaintanceship with Johnson and with regard to the conversations that he had with him. Barron contacted Reser at a tavern in Topeka regarding selling some drugs. Barron was seeking to get rid of methamphetamine and asked Reser to help him. Reser called Duane Johnson and told him what Barron had told him. Johnson said that he could get back in touch with him, which Reser did the next night. Meanwhile, Reser had reported back to Barron. Reser testified that on February 23, 1977, he talked to Johnson about obtaining large quantities of methamphetamine and that Johnson did not at that time know whether he could get five pounds.

Reser also testified that he tried to sell Agent Christy a pound and one-half at about that time, and although the Agent wished five pounds, he purchased the amount offered, one and one-half pounds. Johnson gave Reser the sale prices for larger quantities which he wrote down on a memorandum which was introduced in evidence. Later actual physical delivery was made to the agents.

There were two sales on February 26, 1977, one for one-fourth pound and another for one and one-fourth pounds. At the time of the delivery Reser, Barron, Browning and Johnson were all present at the parking lot where the delivery was made.

The evidence then did support the conclusion that Johnson was the one who had possession of the methamphetamine and who arranged the delivery. Our conclusion is that the testimony of the various witnesses, the defendants-turned-witnesses and the agents who observed the scene was sufficient to support the charges with respect to which it is contended by Johnson that the evidence is insufficient.

## II.

### WHETHER THE DEFENSE OF ENTRAPMENT ASSERTED BY BARRON WAS ESTABLISHED AS A MATTER OF LAW

The ultimate question is whether there is undisputed evidence which shows conclusively and unmistakably that an innocent person was induced to commit the act complained of by trickery or fraud by a government agent. See United States v. Gurule, 522 F.2d 20, 23 (10th Cir. 1975).

For the appellant Barron to take advantage of the doctrine of entrapment it would have to appear that he was an innocent dupe, whereas the government agent was the moving factor in bringing about the violation of the law by him. However, the evidence does not take this shape. It shows that Barron was very active and was not victimized by the agents. Barron took the initiative for the sale in his dealings with Christy. This inference is to be drawn from the recorded telephone conversations.

Barron was entitled, of course, to have the jury consider this contention and the issue of fact was submitted to the jury.

There was ample showing in the record that as early as January 1, 1977, this defendant was laying plans with defendant Bullard to obtain the stock of amphetamine pills.

Reser told the jury that he had encountered Barron at a tavern in the month of February. He was asked about the conver-

sation with Barron on that occasion and he testified:

Q. What conversation did you have with Mr. Barron on this Tuesday night?

A. Just he had some—he was able to get ahold of some crystal.

Q. And, now, did he want you to find him some crystal or was he trying to sell you some crystal?

A. He said he had some.

Q. What did he want you for?

A. To see if I could sell it for him[.]

The foregoing evidence of planning and preparation is wholly inconsistent with the role that Barron sought to establish at trial. It cannot, in view of this, be said that the government, through deception, actually implanted a criminal design in the mind of the defendant. *See United States v. Russell*, 411 U.S. 423, 436, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *United States v. Gurule, supra; United States v. Williams*, 488 F.2d 788 (10th Cir. 1973).

Nor do we have a condition in which the government's conduct has been generally outrageous. *See United States v. Quinn*, 543 F.2d 640 (8th Cir. 1976), and the cases there cited.

Both the testimony, then, and the law oppose this defendant's position that he was entrapped.

### III.

*DID THE TRIAL COURT ERR IN ITS REFUSAL TO STRIKE THE DIRECT TESTIMONY OF WITNESSES RESER AND SMITH?*

The defendants Johnson, Barron and Frey moved at the trial to strike the direct testimony of Richard Lee Reser. The defendant Frey sought also to strike the testimony of defendant Smith (or witness Smith). Smith, while testifying, invoked his Fifth Amendment privilege in response to a question by defendant Barron's attorney as to how many times he had taken LSD. Subsequently, Smith answered the question, "Two hundred, three hundred times."

In response to a question by defendant Frey's attorney as to whether he had been dealing in this type of thing for some time, Smith did not answer the question. Nevertheless, the record as a whole is replete with questioning concerning Smith's activities.

As to the fact that Smith refused to answer, the trial court was not convinced that there was prejudice, and considering the extent of the cross-examination and the scope of it, we agree with this ruling.

The witness Reser, while testifying, invoked his Fifth Amendment privilege, and it is said that this called for striking the direct testimony. Once again, however, the cross-examination of this witness was so extensive that it is impossible to say that any prejudice flowed from his claim of privilege. In fact, the claim of privilege could have been as useful to the cross-examiner as a positive answer would have been.

The question whether there has been a deprivation of cross-examination is peculiarly subject to the trial court's discretion. *See United States v. Headid*, 565 F.2d 1029 (8th Cir. 1977). The trial court here specifically determined that ample opportunity had been extended to impeach Smith and that the subject had been pretty well exhausted. There is no showing of abuse of discretion nor has there been a showing of prejudice. The trial court recognized that the defendants, in the course of cross-examination, were entitled to some latitude in their evidence in order to show that the witnesses might have been acting under the influence of drugs at the time that they viewed the matters with respect to which they testified.

We are convinced that the trial court was not restrictive. On the contrary, it was disposed to allow the defendants full opportunity to cross-examine Reser and Smith regarding drug use.

## IV.

### WAS DEFENDANT FREY DENIED A FAIR TRIAL BECAUSE HE WAS NOT SEVERED FROM THE OTHER DEFENDANTS?

We conclude that he was not. In essence, Frey argues that the Tuesday sale in which he was implicated was a distinct and separate transaction from the Saturday morning sale in which he was not involved, and that he thus suffered prejudice.

■ The government points out that the defendant Frey did not move for a severance before or even during trial. While this undermines somewhat his position, he would nevertheless be entitled to recognition of this point if he could show actual prejudice. *See United States v. Washington,* 550 F.2d 320 (5th Cir. 1977). The defendant must show, in view of not having objected, that the trial court abused its discretion to the degree that the joinder was plain error.

Rule 8(b) allows two or more defendants to be charged in the same indictment or information if they are alleged to have participated in the same series of acts or transactions constituting an offense or offenses. Count X of the indictment charges an overall conspiracy to distribute methamphetamine. The other counts contain substantive charges. It is to be noted that the transactions are not isolated as the appellant would suggest, but are closely related in time, space and nature.

■ Frey was shown to have participated in transactions which are set forth in Counts II, III and IX. He is charged with having been part of a conspiracy. The lack of evidence to show his participation in the Saturday morning transaction does not exonerate him as to the transactions in which he did participate. There was evidence to justify his having been indicted as a part of the conspiracy. The question is reduced to whether evidence as to the transaction in which he did not participate was prejudicial as to the charges in which he was shown to have been a participant.

Thus there was justification for including him in the one indictment.

We find nothing in the record revealing an effort by the defendant to obtain a protective instruction in the court's charge cautioning the jury that they were to refrain from considering evidence involving a transaction in which one or more of the defendants had no part. In circumstances of this kind the burden is on the party asserting error to establish the prejudice. *See United States v. Walton,* 552 F.2d 1354 (10th Cir.), *cert. denied,* 431 U.S. 959, 97 S.Ct. 2685, 53 L.Ed.2d 277 (1977). He pointed out that there is no evidence here that he requested it. Notwithstanding this, the court was careful to point out in Instruction No. 5 that a judgment of acquittal as a matter of law was entered in favor of Frey with respect to Counts IV, V, VI and VII. He specifically mentioned that Frey had not participated in the Saturday morning transaction at the White Lake Shopping Center on February 26, 1977.

Again, in Instruction No. 10, the trial court carefully cautioned the jury that each individual defendant was entitled to have his case heard and determined in an individual way. The court pointed out, of course, that a conspiracy does call for consideration of the relationship of an accused with others.

Considering the care with which the trial court instructed the jury, it cannot be said that there is any substance to Frey's contention as to the misjoinder.

## V.

### WAS THERE A SUFFICIENCY OF THE EVIDENCE AS TO THE DEFENDANT FREY?

■ Smith testified that he met Frey on February 22, 1977, at Barron's house. Bullard, Barron and Frey were present and held discussions regarding the sale of meth-

amphetamine which was to occur that evening. Frey and Bullard stated that they wanted the money first and only after that would they distribute the methamphetamine. This was different from the position of Barron and Smith, which Smith had in turn communicated to Agent Christy. However, Frey and Bullard finally agreed to exchange the money and the methamphetamine at the same time. Frey took Smith's car and left Barron's residence. He obtained the four ounces of methamphetamine and returned to Barron's house. Bullard and Frey decided to wait upstairs to oversee the sale and make sure they got their money. The testimony of Agent Christy supports Smith's testimony.

Bullard's testimony also supported Smith's as to the events of February 22. Indications were that Frey was there for protection purposes and was paid $50.00 for protecting the drug transactions.

As to Counts IX and X, Christy, Sparks and Bullard testified. This evidence showed that Christy and Sparks went to Bullard's residence on Saturday afternoon and engaged in a discussion about drug transactions, and that Bullard was then looking for a person that he referred to as his "man" and who turned out to be Frey.

Frey told the agents after he arrived that on the next day they were going to get five pounds and that they could get two pounds on the day in question. Frey made some statements about getting more methamphetamine in Chicago or Detroit. There was a discussion of use of commercial air transportation for this purpose. Frey and Bullard made efforts to locate the two pounds of methamphetamine in Topeka. However, they were unable to locate it. Frey told Bullard to give his unlisted telephone number to the agents.

The evidence was ample in support of the charges against Frey.

## VI.

### WHETHER 21 U.S.C. § 811 AND 812 ARE CONSTITUTIONALLY INVALID

Defendant Frey has finally advanced the contention that 21 U.S.C. §§ 811 and 812 are invalid because there has been an unconstitutional delegation of authority by the Congress to the Attorney General and the Secretary of the Department of Health, Education and Welfare.

The authorities offered in support of the argument are *Panama Refining Company v. Ryan*, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935), and *Schechter Poultry Corp. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935). Frey's argument is that when Congress delegates authority it must articulate clear standards to be followed by the agency in a plain and clear manner. Otherwise the attempted exercising becomes unlawful. The Supreme Court has been less strict, however, than the defendant maintains it should be. *See American Power & Light Co. v. Securities & Exchange Commission*, 329 U.S. 90, 105, 67 S.Ct. 133, 142, 91 L.Ed. 103 (1946), wherein the Supreme Court said that a delegation is constitutionally sufficient "if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." Professor Davis in his supplement to his Treatise on Administrative Law suggests that the *Panama* and *Schechter* decisions are no longer viable. Davis, *Administrative Law of the Seventies*, § 2.01 (1976).

The various circuits have dealt with this question and have determined that the statutes here in question, §§ 811 and 812, are valid regardless of whether, Professor Davis's evaluation is correct. *See United States v. Roya*, 574 F.2d 386 (7th Cir.), *cert. denied*, —— U.S. ——, 99 S.Ct. 172, 58 L.Ed.2d 165 (1978); *United States v. Boney*, 572 F.2d 397 (2d Cir. 1978); *United States v. Davis*, 564 F.2d 840 (9th Cir. 1977), *cert. denied*, 434 U.S. 1015, 98 S.Ct. 733, 54 L.Ed.2d 760 (1978).

In *United States v. Pastor*, 557 F.2d 930 (2d Cir. 1977), the Second Circuit determined that the delegation in § 811 was in accordance with the clear statement of the congressional policy governed by precise standards consistent with the statement of

policy in requiring specific findings as to the qualities and dangers of the substance as a condition precedent to regulation. 557 F.2d at 941.

Our court in *United States v. Jones*, 540 F.2d 465 (10th Cir. 1976), *cert. denied*, 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551, (1977), considered the lack of precision of 21 U.S.C. § 841(a)(1)(A). The holding was that the failure of Congress to include the statutory maximum on the length of special parole terms in the mentioned statute did not constitute an invalid delegation.

The present contention is without merit.

\* \* \* \* \* \*

The judgments of the district court should be and the same are hereby affirmed.