UNITED STATES of America, Plaintiff–Appellant,

v.

Robert WIDDOWSON, also known as Rob Sullivan, Bruce Bachman, and Michael Whiteley, Defendants–Appellees.

Nos. 89–2075, 89–2085 and 89–2086.

United States Court of Appeals, Tenth Circuit.

Oct. 15, 1990.

Presiliano Torrez, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., and Charlotte Mapes, Atty., Office of the Chief Counsel, Drug Enforcement Admin., with him on the brief), Albuquerque, N.M., for plaintiff-appellant.

Peter Schoenburg, Asst. Federal Defender (Nancy Hollander with him on the brief), Albuquerque, N.M., for defendants-appellees Bruce Bachman and Michael Whiteley.

Charles O. Grigson, Austin, Tex., filed a brief on behalf of defendant-appellee Robert Widdowson.

Before HOLLOWAY, Chief Judge, and SETH and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Defendants Robert Widdowson, Bruce Bachman, and Michael Whiteley were indicted on counts involving conspiracy to manufacture, manufacture, possession with intent to distribute, and distribution of the drug N–hydroxy-3, 4–methylenedioxyamphetamine (NMDA), temporarily classified as a Schedule I controlled substance. The Administrator of the Drug Enforcement Administration (DEA) placed NMDA temporarily on Schedule I, acting under a delegation order of the Attorney General. Defendants filed a motion to dismiss their indictments, contending, alternatively, that the delegation to the Attorney General was unconstitutional, that the Attorney General had not subdelegated this scheduling function to the DEA Administrator, and that if he had, under 21 U.S.C. § 811(h), he lacked power to make such a subdelegation and must himself make this scheduling decision. The district court granted the motion without passing on the constitutional argument, 723 F.Supp. 583, and the United States appealed.

I

In 1970, Congress enacted the Comprehensive Drug Abuse Prevention and Control Act, Pub.L. No. 91–513, 84 Stat. 1236. Title II of that Act, known as the Basic Controlled Substances Act (the Act), separates controlled substances into five schedules. See 21 U.S.C. § 812(b). Penalties for violating the Act depend upon the schedule in which the relevant drug is found.

Section 201(a) of the Act, 21 U.S.C. § 811(a), gives the Attorney General the authority to determine in which schedule drugs should be placed permanently. The Attorney General can place a drug permanently upon a particular schedule only after following a procedure that includes a number of safeguards. Id. § 811(a)–(c). In 1984, Congress amended § 811 by adding subsection (h). See Pub.L. No. 98–473, tit. II, sec. 508, 98 Stat. 1837, 2071–72 (codified at 21 U.S.C. § 811(h)). Under § 811(h), the Attorney General can circumvent the ordinary procedures and safeguards for scheduling drugs if "necessary to avoid an imminent hazard to the public safety." In such a case, the Attorney Gen-

eral has unfettered discretion to temporarily place a drug in Schedule I.

In 1973, the Attorney General delegated to the Administrator of the DEA the authority under § 811(a) to permanently schedule drugs. *See* 28 C.F.R. § 0.100(b) (1986). We held in *United States v. Spain*, 825 F.2d 1426 (10th Cir.1987), that this 1973 delegation order did not apply to the 1984 amendment which added § 811(h). In July 1987, the Attorney General made a new delegation order that purported to delegate to the DEA Administrator all "[f]unctions vested in the Attorney General by the Comprehensive Drug Abuse Prevention and Control Act of 1970, as amended." 28 C.F.R. § 0.100(b) (1989). The Attorney General commented that the 1987 delegation "ensure[s] that any functions vested in Attorney General by statutory amendments to the [Act] are delegated to the Administrator." 52 Fed.Reg. 24,447 (1987). Although the 1987 delegation does not expressly mention § 811(h), we conclude that it effectively delegates all delegable powers held by the Attorney General under the Act, and we do not discuss that issue further. *See United States v. Touby*, 909 F.2d 759, 767–68 (3d Cir.1990) (1987 delegation effectively delegates Attorney General's temporary scheduling authority).

In August 1987, the DEA Administrator gave notice that NMDA would be placed on Schedule I. *See* 52 Fed.Reg. 30,175 (1987). Two months later, the Administrator temporarily placed NMDA on Schedule I. *See* 52 Fed.Reg. 38,225–26 (1987). In 1988, the defendants were indicted for their involvement with NMDA.

## II

■ The district court did not address the constitutionality of the delegation under § 811(h) from Congress to the Attorney General because it ruled for defendants on another basis. In *Spain*, we expressed doubt about the constitutionality of this delegation, but found it unnecessary to decide the issue. *See Spain*, 825 F.2d at 1429. The Third Circuit's recent opinion in *United States v. Touby*, 909 F.2d 759 (3d Cir.1990), contains two well developed, opposing views on the constitutional issue. *See id.* at 766–68, (majority opinion) 774–76 (Hutchinson, J., dissenting). *See also United States v. Emerson*, 846 F.2d 541, 545–46 (9th Cir.1988) (upholding constitutionality of delegation). Because logic would seem to compel consideration of Congress' delegation to the Attorney General before passing upon subdelegation to the DEA Administrator, and because we believe a discussion of the constitutional issue strengthens the statutory argument against subdelegation to the DEA Administrator, we choose here to decide whether the delegation to the Attorney General violates the separation of powers doctrine.

We already have held that the *permanent* scheduling power given to the Attorney General and the Secretary of Health and Human Services by § 811(a) is not an unconstitutional delegation of Congress' legislative power. *United States v. Barron*, 594 F.2d 1345, 1352–53 (10th Cir.), *cert. denied*, 441 U.S. 951, 99 S.Ct. 2180, 60 L.Ed.2d 1056 (1979). In *Barron*, we relied upon the reasoning of other circuit opinions holding to the same effect, especially *United States v. Pastor*, 557 F.2d 930 (2d Cir. 1977). *Pastor* is the first and leading circuit court case to consider the constitutionality of Congress' delegation to the Attorney General of the power to make permanent scheduling decisions; it analyzed the issue extensively. In upholding the § 811(a) delegation, it relied on the precise standards governing the Attorney General's scheduling decisions and the specific findings required before scheduling. It also relied upon the following restraints on any potential abuse of the Attorney General's power to make and enforce the same law: (1) the Attorney General cannot act contrary to the Secretary of Health and Human Services' recommendation; (2) he must follow the public notice and hearing requirements of the Administrative Procedure Act; and (3) his actions are subject to judicial review. *Pastor*, 557 F.2d at 941. Subsequent circuit court cases upholding the constitutionality of the § 811(a) delega-

tion relied on similar reasoning.[1]

The *Pastor* and *Barron* holdings are correct, we believe. But they do not resolve the instant case, which involves Congress' delegation of the power to make *temporary* scheduling decisions under § 811(h).

Separation of powers as doctrine may appear to be moribund, but we do not agree with those who think it is dead. The Supreme Court recently relied on the separation of powers doctrine to strike down the one-House veto in *INS v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), and to hold § 251 of the Gramm–Rudman–Hollings Act unconstitutional in *Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986). Even more recently, the Court recognized that " 'the integrity and maintenance of the system of government ordained by the Constitution,' mandate that Congress generally cannot delegate its legislative power to another Branch." *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 654, 102 L.Ed.2d 714 (1989) (quoting *Field v. Clark*, 143 U.S. 649, 692, 12 S.Ct. 495, 504, 36 L.Ed. 294 (1892)).

■ Although the Supreme Court uniformly has upheld extensive delegations of power permitting administrative agencies to regulate activities and industries, "The area of permissible indefiniteness narrows . . . when the regulation invokes criminal sanctions. . . ." *United States v. Robel*, 389 U.S. 258, 275, 88 S.Ct. 419, 430, 19 L.Ed.2d 508 (1967) (Brennan, J., concurring). When delegating the power to deprive persons of their liberty, Congress must provide procedural protections, adequate standards reflecting a "legislative judgment" and adequate notice to those affected. *Id.* at 275–82, 88 S.Ct. at 429–34. In upholding Con-

gress' recent delegation to the United States Sentencing Commission to promulgate binding sentencing guidelines, the Supreme Court distinguished *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935), and *Panama Refining Co. v. Ryan*, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935) (which struck down congressional delegations permitting the President to promulgate regulations invoking criminal penalties), by noting that the sentencing commission delegation "[did] not make crimes of acts never before criminalized." *Mistretta*, 109 S.Ct. at 655 n. 7. *See also Fahey v. Mallonee*, 332 U.S. 245, 249, 250, 67 S.Ct. 1552, 1553, 1554, 91 L.Ed. 2030 (1947).

A major difference between the majority and the dissent in *Touby* was whether the power delegated to the Attorney General by § 811(h) was the power to define primary criminal conduct—to create a crime. We agree with dissenting Judge Hutchinson; the power to criminalize the manufacture and sale of a previously legal drug, and to subject violators to what could be life sentences,[2] is the power to create a crime. But that does not end the inquiry, since the power of permanent scheduling under § 811(a) is equally the power to define primary criminal conduct, and we have found that delegation valid.

We believe that § 811(h) violates the nondelegation doctrine because of the lack of safeguards and limitations on the Attorney General's temporary scheduling power. In upholding the Attorney General's permanent scheduling power under § 811(a), it was important that the Attorney General had to obtain scientific information and a *binding* scheduling recommendation from the Secretary of Health and Human Servic-

---

1. In *United States v. Hovey*, 674 F.Supp. 161 (D.Del.1987), the court canvassed circuit court cases addressing the constitutionality of the § 811(a) delegation. *Hovey* noted that in uniformly upholding the delegation these courts generally relied on four factors:

   "(1) the clear statement of congressional policy; (2) the specificity of the standards guiding the decisionmaker; (3) the need for delegation in order to meet the congressionally identified problem; and (4) the availability of judicial review to prevent arbitrary decisions."

*Id.* at 164 (footnotes omitted).

2. Under § 811(h), the Attorney General must place all temporarily scheduled drugs on Schedule I. *See* 21 U.S.C. § 811(h)(1). An individual manufacturing or selling any amount of a Schedule I drug can be sentenced to life imprisonment if death or serious bodily injury results from use of the drug. *See* 21 U.S.C. § 841(b)(1)(B).

es, that scheduling procedures included specific public notice and hearing requirements, and that the Attorney General's decision was subject to judicial review. *See Pastor*, 557 F.2d at 941. None of these limitations or safeguards is present in § 811(h). The nation's chief law enforcement officer makes the law he is to enforce. In determining that a drug must be scheduled temporarily because it poses "an imminent hazard to the public safety," the Attorney General is charged to consider the drug's history and current pattern of abuse, the scope and significance of that abuse and potential risks to the public health. *See* 21 U.S.C. § 811(h)(1), (3). But he need not follow any scientific advice, he need not hold any hearings—just give thirty days notice in the Federal Register, *id.* § 811(h)(1)—and his decision, by explicit statutory command, *id.* § 811(h)(6), is not subject to judicial review. In other words, the Attorney General acts with unfettered discretion when making temporary scheduling decisions; he could add a substance as innocuous as aspirin to Schedule I and his decision could not be challenged.

We agree with the dissenting judge in *Touby* that § 811(h) and related case law do not permit a defendant charged with manufacturing or selling a temporarily scheduled drug to challenge § 811(h) on any ground other than those considered in the instant appeal.[3] We do not think that the "temporary" nature of temporary scheduling constitutes a limitation that makes the delegation constitutional. Individuals charged and convicted of manufacturing or selling a temporarily scheduled drug could spend nearly eighteen months in prison awaiting permanent scheduling, and it is by no means clear that their convictions could be vacated if the Attorney General decides not to place the drug on the permanent schedule or the Secretary of Health and Human Services prohibits him from doing so.

Court decisions have given significant latitude to congressional delegations to regulate complex, rapidly changing, impor-

tant activities or products. Certainly harmful drugs is such an area. But we think the instant delegation goes beyond any that have been upheld. Although the authority of *Schechter* may be in doubt in many respects, it was surely correct in stating that although "[e]xtraordinary conditions may call for extraordinary remedies ... [e]xtraordinary conditions do not create or enlarge constitutional power." *Schechter*, 295 U.S. at 528, 55 S.Ct. at 842 (footnote omitted). Like Judge Hutchinson, we believe that "[i]f this delegation is constitutional, ... any individual protection provided by the constitutional prohibition against a general delegation of legislative power is a relic of the past." *Touby*, 909 F.2d at 779 (Hutchinson, J., dissenting). Like him, we are "unwilling to consign it to the museum until the Supreme Court so decides." *Id.*

We hold, therefore, that § 811(h) unlawfully delegates to the Attorney General the legislative powers vested in Congress under Art. I, § 1 of the Constitution.

### III

■ Because our conclusion on the constitutionality of the § 811(h) delegation to the Attorney General creates a conflict in the circuits, and the Supreme Court may disagree with our holding, we also treat whether Congress intended to permit the Attorney General to subdelegate to the Administrator of the Drug Enforcement Administration (DEA) the authority to temporarily schedule substances pursuant to 21 U.S.C. § 811(h). The Third Circuit recently held that such authority was delegable. *See Touby*, 909 F.2d at 767–68. On this issue also we respectfully disagree. Considering the statute's plain language, its purpose and the dangers inherent in permitting subdelegation of the temporary scheduling function, we hold that a proper construction of its intent was that if Congress' delegation to the Attorney General

---

3. We note that in *United States v. Emerson*, 846 F.2d 541, 544 (9th Cir.1988), the government took the position that review of the constitution-

al issue was improper. Obviously, we disagree. The government has not taken that position in the instant case.

was valid, only the Attorney General may make temporary scheduling decisions.

■ The relevant inquiry in any subdelegation challenge is whether Congress intended to permit the delegatee to subdelegate the authority conferred by Congress. *United States v. Giordano*, 416 U.S. 505, 512–23, 94 S.Ct. 1820, 1825, 40 L.Ed.2d 341 (1974); *Fleming v. Mohawk Wrecking & Lumber Co.*, 331 U.S. 111, 119–23, 67 S.Ct. 1129, 1133–35, 91 L.Ed. 1375 (1947); *Cudahy Packing Co. v. Holland*, 315 U.S. 357, 358–67, 62 S.Ct. 651, 652–57, 86 L.Ed. 895 (1942). Ordinarily, Congress intends that duties delegated to the Attorney General be subdelegable:

> "The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General."

28 U.S.C. § 510.

The Supreme Court has noted, however, that "Despite § 510, Congress does not always contemplate that the duties assigned to the Attorney General may be freely delegated." *Giordano*, 416 U.S. at 514, 94 S.Ct. at 1826. In *Giordano* the Supreme Court concluded that Congress did not intend to permit subdelegation of the Attorney General's congressionally conferred power to authorize applications for wiretaps. The Court focused on three factors: the delegating statute's language, its purpose, and its legislative history. *Id.* at 512–22, 94 S.Ct. at 1825–30.

The statute the Court considered in *Giordano* provided that "the Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize" a wiretap application. 18 U.S.C. § 2516(1) (before 1984 amendment). Although the statute did not expressly proscribe subdelegation, the Court concluded that, fairly read, it intended to prevent

subdelegation. *Giordano*, 416 U.S. at 514, 94 S.Ct. at 1826.

Like the statute in *Giordano*, § 811(h) does not expressly proscribe subdelegation. Nevertheless, the language of that section on its face is more restrictive than 18 U.S.C. § 2516(1). It mentions only the Attorney General in conferring temporary scheduling authority: *"If the Attorney General finds* that the scheduling of a substance in schedule I on a temporary basis is necessary to avoid an imminent hazard to the public safety, *he may"* temporarily schedule the substance. 21 U.S.C. § 811(h)(1) (emphasis added).

It is true, as the United States argues, that 21 U.S.C. § 871(a) states expressly that the Attorney General may delegate "any" of his functions under the Act. That section, however, was enacted fourteen years before temporary scheduling was permitted by § 811(h). And as we have previously noted, although the 1984 enactment of § 811(h) technically was an amendment to the Act, "it was a different and separate addition to the Act with a new purpose and 'procedure.'" *Spain*, 825 F.2d at 1429. Further, § 871(a) merely restates the general rule, already articulated in 28 U.S.C. § 510, that the Attorney General may delegate congressionally conferred authority. In *Cudahy*, the Court faced a similar situation. Although the Fair Labor Standards Act provided that the Administrator of the Wage and Hour Division "or his duly authorized representative may exercise any or all of his powers in any place," [4] the Supreme Court held that Congress did not intend to permit subdelegation of the Administrator's authority to sign and issue subpoenas duces tecum. The Court stated: "A construction of the Act which would thus permit the Administrator to delegate all his duties, including those involving administrative judgment and discretion which the Act has in terms given only to him, can hardly be accepted unless plainly required by its words." 315 U.S. at 361, 62 S.Ct. at 654.[5]

---

**4.** *See* Fair Labor Standards Act of 1938, Pub.L. No. 75–718, 52 Stat. 1060, 1062, § 4(c) (codified at 29 U.S.C. § 204(c)).

**5.** We note that *Fleming v. Mohawk Co.*, 331 U.S. 111, 67 S.Ct. 1129, 91 L.Ed. 1375 (1947), distinguished *Cudahy* and held that under the Emergency Price Control Act of 1942, the Price Administrator could delegate to district directors

We note again, as we did in *Spain,* that there seems some special significance that the delegation of authority under § 811(h) is to the Attorney General *alone.* The recommendation of the Secretary of Health and Human Services on medical and scientific matters, and that a drug not be controlled, are binding upon the Attorney General for *permanent* scheduling purposes. 21 U.S.C. § 811(b). In exercising his temporary scheduling authority under § 811(h) the Attorney General is not bound by recommendations of the Secretary. In view of this, it seems extraordinary to assume that Congress intended to permit the temporary scheduling power to be delegated to a lesser administrator such as the head of the DEA.

We are further persuaded to the view that the temporary scheduling decision was intended to be exercised only by the Attorney General in person because of the substantial differences in procedural and substantive safeguards between temporary and permanent scheduling that we have already discussed in Part II. Under § 811(a), the Attorney General must consider a number of technical, scientific and medical factors in making permanent scheduling decisions. *See* 21 U.S.C. § 811(c)(1)–(3), (7)–(8). He cannot even begin permanent scheduling proceedings until he receives a *binding* recommendation from the Secretary of Health and Human Services regarding these factors. *Id.* § 811(b). All that the Attorney General must consider in temporary scheduling are three of the eight factors listed in § 811(c): essentially, "actual abuse, diversion from legitimate channels, and clandestine importation, manufacture, or distribution." *Id.* § 811(h)(3). Further, permanent scheduling under § 811(a) must be preceded by a hearing and public comment. *Id.* § 811(a). Temporary scheduling under § 811(h) requires no such safeguards. Finally, permanent scheduling decisions under § 811(a) are subject to judicial review, while temporary scheduling decisions under § 811(h) are not. *Id.* § 811(h)(6).

Congress' express purpose in enacting § 811(h) was to permit temporary scheduling if "necessary to avoid an imminent hazard to the public safety." 21 U.S.C. § 811(h)(1). The brief legislative history underlying § 811(h) confirms that it was enacted to protect the public safety: "[Section 811(h)] is designed to allow the Attorney General to respond quickly to protect the public from drugs of abuse that appear in the illicit traffic too rapidly to be effectively handled under the lengthy routine control procedures." S.Rep. No. 225, 98th Cong., 2d Sess. 261–63, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3446–47 (Senate Judiciary Committee Report on Comprehensive Crime Control Act of 1984).[6]

his authority to sign and issue subpoenas. Although the relevant statutory provisions interpreted in *Fleming* were practically identical to those interpreted in *Cudahy,* several factors mandated a different result. Among those factors was: (1) a legislative history indicating that Congress intended to permit subdelegation, and (2) a provision granting the Price Administrator broad rulemaking authority that, "may itself [have been] an adequate source of authority to delegate a particular function...." *Id.* 331 U.S. at 121, 67 S.Ct. at 1134.

We believe that *Fleming* does not control the case at hand. There is almost no legislative history underlying the statute at issue in the instant case. Moreover, § 811(h) was enacted fourteen years after Congress granted the Attorney General broad authority to delegate all of his functions under the Basic Controlled Substances Act. In *Fleming,* the provisions granting the Price Administrator broad rulemaking and delegation authority were enacted simulta-

neously with the provision granting the Administrator's subpoena power.

**6.** Pointing to the legislative history underlying a 1986 amendment to the Act, the United States argues that Congress contemplated subdelegation. Referring to the 1984 addition of § 811(h), that legislative history states: "The 98th Congress extended to DEA the power to control such new substances on an emergency basis. DEA has used the authority five times to control 13 new dangerous drugs...." H.R.Rep. No. 848, 99th Cong.2d Sess, pt. 1, at 4 (1986).

We are not persuaded that this statement, made in conjunction with a 1986 amendment, has any bearing on the earlier Congress' intent in enacting § 811(h) in 1984. As the Supreme Court has recognized, "'the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.'" *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 117, 100 S.Ct. 2051, 2061, 64

The decision to bypass ordinary safeguards against error and instead weigh only actual abuse, diversion and clandestine activities to determine whether temporary scheduling "is necessary to avoid an imminent hazard to the public safety," 21 U.S.C. § 811(h)(1), seems peculiarly a decision for an official of cabinet rank. As we noted in *Spain*, 825 F.2d at 1428, "The conclusion as to the hazard to 'public safety' is a standard especially within the expertise of the Attorney General himself and his immediate staff rather than one for a technical group as the DEA." In holding that the Wage and Hour Administrator of the Department of Labor could not delegate his subpoena powers, the Supreme Court relied in part on the dangers inherent in permitting such subdelegation:

> "Unlimited authority of an administrative officer to delegate the exercise of the subpoena power is not lightly to be inferred. It is a power capable of oppressive use, especially when it may be indiscriminately delegated and the subpoena is not returnable before a judicial officer.... [T]he subpoena is in form an official command, and even though improvidently issued it has some coercive tendency, either because of ignorance of their rights on the part of those whom it purports to command or their natural respect for what appears to be an official command, or because of their reluctance to test the subpoena's validity by litigation. All these are cogent reasons for inferring an intention of Congress not to give unrestricted authority to delegate the subpoena power which it has in terms granted only to the responsible head of the agency."

*Cudahy*, 315 U.S. at 363–64, 62 S.Ct. at 655.

Without question, the unfettered power to criminalize the manufacture and sale of previously legal substances is potentially more oppressive than the power to sign and issue subpoenas. As one commentator has noted, permitting the Administrator of the DEA to exercise such power is inherently dangerous:

> "The dangers of this power of temporary scheduling, in the hands of an enforcer rather than a policy-maker, are readily imaginable.... It is quite possible that a research chemist could be arrested, tried, and convicted for developing a Schedule I drug that later proved to be safe. In any event, there is danger in allowing a technical administrator to make a public policy decision that will place a substance in Schedule I of the drug schedules."

Note, *The Emergence and Emergency of Designer Drugs: Subdelegation of the Power Temporarily to Schedule in Light of* United States v. Spain, 14 Am.J. Crim.Law 257, 268 (1988). These dangers are only multiplied by the explicit statutory command that temporary scheduling decisions are not subject to judicial review. *See* 21 U.S.C. § 811(h)(6).

We are satisfied that the statutory language and expressly stated purpose of § 811(h), coupled with the dangers inherent in permitting subdelegation of the temporary scheduling function, support our conclusion that this case is more similar to the situation the Supreme Court found in *Giordano* and *Cudahy*, in which it denied subdelegation, than to other cases in which subdelegation was allowed. The meager legislative history does not convince us otherwise.

As an alternative to our holding that the delegation of temporary scheduling to the Attorney General is unconstitutional, we hold that the Attorney General's powers under the 1984 amendment, adding 21 U.S.C. § 811(h), are not delegable.

AFFIRMED.

L.Ed.2d 766 (1980) (quoting *United States v. Price*, 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4

L.Ed.2d 334 (1960)).